UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Georges F. de Laire

     v.                                    Civil No. 21-cv-131-JD
                                             Opinion No. 2021 DNH 066
Gary Michael Voris, et al.

O R D E R

The Very Reverend Georges F. de Laire, J.C.L. brings claims
for defamation and intentional infliction of emotional distress
against Gary Michael Voris, Anita Carey, and St. Michael's
Media, a/k/a Church Militant.  In support, de Laire alleges that
the defendants have published defamatory articles and a video
about him that arose from a doctrinal dispute between a group,
known as the Slaves of the Immaculate Heart of Mary, who operate
the Saint Benedict Center, in New Hampshire, and church
officials.  The defendants move to dismiss the claims for lack
of personal jurisdiction and improper venue.

Background[1]

Church Militant is identified as a Michigan not-for-profit
corporation.  Voris is the president of Church Militant, and
Carey was a staff reporter for Church Militant from March of

---

[1] The facts are taken from the exhibits filed with the
complaint, the exhibits filed with the motion to dismiss, the
exhibit filed with the objection, and allegations in the
complaint to the extent they are undisputed.

2017 to November of 2019.  The defendants state that Church
Militant "operates as a multi-media company from its
headquarters in the State of Michigan."  Doc. no. 8-1, at *2.
The defendants further represent that Church Militant "has
played a leading role in publicizing corruption in the Roman
Catholic Church."  Id.

De Laire is a priest in the Catholic Church and the pastor
of a parish in Manchester, New Hampshire.  He also serves as the
Judicial Vicar and the Vicar for Canonical Affairs for the
Diocese of Manchester.  He lives in New Hampshire.

Church Militant published an article about de Laire dated
January 17, 2019, that addressed de Laire's role in the church's
interactions with the St. Benedict Center.  The article accused
de Laire of changing "a solemnly defined dogma of the Faith into
a heresy" and of improperly interpreting church doctrine as
applied to the St. Benedict Center.  Doc. no. 1-3, at *2.  The
article went on to claim that "work colleagues" of de Laire said
he was emotionally unstable and that he was using the St.
Benedict Center dispute to repair his image.  The article also
said that there had been three complaints lodged against de
Laire over several years which alleged corruption, abuse of
office, violations of the law, and incompetence.  The Church
Militant writer claimed to have learned that de Laire was
outsourcing his work and that he was vindictive and

manipulative.[2]  The article accused de Laire of staying in a
hotel instead of at a church property and of buying an expensive
home.

Voris travelled to New Hampshire in April of 2019 to
interview members and supporters of the St. Benedict Center
about de Laire's actions and made a video about de Laire.
Church Militant published the video about de Laire on April 15,
2019, which de Laire contends includes defamatory statements
about him.  The video was published on Church Militant's website
and then was published on other websites.

On June 25, 2019, Church Militant published another
article, which was written by Anita Carey.[3]  Carey reported the
demolition of St. Joseph's Catholic Church in Laconia, New
Hampshire.  Carey stated that de Laire disagreed with the
interpretation of cannon law offered by a lawyer in Mobile,
Alabama, and approved the demolition.  Carey stated that de
Laire had previously targeted the St. Benedict Center.  Carey
repeated that complaints had been lodged against de Laire that
alleged corruption, abuse of office, violations of the law, and

---

[2] The article is attributed to Church Militant without
identification of the author.

[3] The Carey article provides the date of June 25, 2019.  In
their reply, however, the defendants refer to a July article by
Carey.  That article does not appear to have been alleged in the
complaint or provided to the court.

incompetence.  Carey also repeated that de Laire owned an
expensive home and stated that a tax lien had been placed on the
home.

Church Militant has 288 donors who live in New Hampshire.
Many other donors live in Michigan, in other states, and in
foreign countries.  It does not own property or have offices in
New Hampshire.  The articles and video that de Laire cites as
defamatory were published by Church Militant on its website and
other websites, which are available in New Hampshire.

I.  Personal Jurisdiction

The defendants contend that personal jurisdiction is lacking
because they have not had sufficient contacts with New Hampshire.
In considering a motion to dismiss based on a lack of personal
jurisdiction under Federal Rule of Civil Procedure 12(b)(2), when
no hearing has been held, the court proceeds under the prima
facie standard.  United States v. Swiss Am. Bank, Ltd., 274 F.3d
610, 618 (1st Cir. 2001).  For that purpose, the court takes the
plaintiff's properly supported proffers of evidence as true and
construes the proffers in the light most favorable to the
plaintiff.  Nandjou v. Marriott Int'l, Inc., 985 F.3d 135, 147
(1st Cir. 2021).  The court will also consider undisputed facts
provided by the defendant.  Kuan Chen v. U.S. Sports Acad., Inc.,
956 F.3d 45, 54 (1st Cir. 2020).

When personal jurisdiction is challenged, the plaintiff
bears the burden of showing that jurisdiction exists.  Daynard
v. Ness, Motley, Loadhold, Richardson & Poole, P.A., 290 F.3d
42, 50 (1st Cir. 2002).  While personal jurisdiction is required
for each defendant and each claim, in this case, the defendants
do not differentiate among themselves or between the claims, and
therefore, the court will address the defendants and the claims
together.  See Nandjou v. Marriott Int'l, Inc., 985 F.3d 135,
148 (1st Cir. 2021; PFIP, LLC v. Planet Fitness Enters., Inc.,
2004 DNH 159, 2004 WL 2538489, at *4 n.5 (D.N.H. Nov. 10, 2004).

De Laire asserts that specific personal jurisdiction exists
over the defendants.[4]  To show specific personal jurisdiction, de
Laire must meet three requirements:

---

[4] In a diversity jurisdiction case, such as this one, the
court exercises personal jurisdiction under New Hampshire's
long-arm statute, RSA 510:4, I, and the due process clause of
the United States Constitution.  C.W. Downer & Co. v. Bioriginal
Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014).  RSA 510:4,
I extends jurisdiction as far as allowed under the due process
clause.  Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d
284, 287 (1st Cir. 1999).  For that reason, the court need only
address the requirements for personal jurisdiction as limited by
the due process clause.  Id.; Ayasli v. Korkmaz, 2020 DNH 131,
2020 WL 4287823, at *5 (D.N.H. July 27, 2020).  To satisfy the
due process clause, a defendant must have sufficient minimum
contacts with the forum state "such that the maintenance of the
suit does not offend traditional notions of fair play and
substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S.
310, 316 (1945); accord Ford Motor Co. v. Bandemer, --- S. Ct. -
--, 2021 WL 1132515, at *4 (Mar. 25, 2021).  Minimum contacts
may be established through general or specific personal
jurisdiction.  PREP Tours, Inc. v. Am. Youth Soccer Org., 913
F.3d 11, 17 (1st Cir. 2019).

First, the claim underlying the litigation must
directly arise out of, or relate to, the defendant's
forum-state activities. Second, the defendant's in-
state contacts must represent a purposeful availment
of the privilege of conducting activities in the forum
state, thereby invoking the benefits and protections
of that state's laws and making the defendant's
involuntary presence before the state's courts
foreseeable. Third, the exercise of jurisdiction must
be reasonable.

PREP Tours, Inc. v. Am. Youth Soccer Org., 913 F.3d 11, 17 (1st
Cir. 2019). Each requirement is addressed separately.


A. Relatedness

To satisfy the relatedness requirement, de Laire's claims
must either arise out of or relate to the defendants' contacts
with New Hampshire. Id.; Knox v. MetalForming, Inc., 914 F.3d
685, 690-91 (1st Cir. 2019). One measure of relatedness used in
tort cases is whether the defendants' contacts with the forum
were the proximate cause of the tort alleged. Nandjou, 985 F.3d
at 150. The relatedness requirement is a "flexible, relaxed
standard" that may be satisfied by showing that a claim has a
"demonstrable nexus" to the defendant's contacts with the forum.
Knox, 914 F.3d at 691.

The defendants argue that relatedness is lacking, asserting
that they "had no contacts with the State of New Hampshire in
connection with any of the allegedly defamatory comments." Doc.
no. 8-1, at *10. The defendants assert that Voris's video

published in April of 2019, which was based on his visit to New
Hampshire and his interviews of New Hampshire residents, did not
contain actionable defamatory comments and repeated statements
made previously.[5]  The January and June articles, they contend,
are not related to actionable conduct in New Hampshire because
they were written in Michigan and posted to the internet in
Michigan.

---

[5] To the extent that the defendants challenge the defamation
claim on the merits, that is not appropriate in this context
because the defendants did not move to dismiss for failure to
state a claim.  Instead, the question here is whether the
claims, as alleged, arose from the defendants' contacts with New
Hampshire.

In addition, the defendants contend that the single
publication rule precludes consideration of Voris's April 2019
video that repeated defamation published in the January article.
The single publication rule, often invoked for purposes of the
statute of limitations, means that a new cause of action does
not accrue each time the publication of the defamatory statement
is distributed, such as with each edition of a defamatory book
or each edition of a newspaper with a defamatory article.
Keeton v. Hustler Magazine, Inc., 131 N.H. 6, 8-11 (1988).  The
defendants have not shown that the single publication rule
precludes consideration of Voris's contacts with New Hampshire
to make the April video, for purposes of determining personal
jurisdiction, particularly when the allegedly defamatory
statements were included in Voris's video, a new format, which
was made available on YouTube as well as on the Church Militant
website.  See, e.g., Yeager v. Bowlin, 693 F.3d 1076, 1081-82
(9th Cir. 2012); Trombetta v. Novocin, 2020 WL 1304120, at *6
(S.D.N.Y. Mar. 19, 2020).

"[T]he tort of libel is generally held to occur wherever the offending material is circulated."[6] Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 777 (1984).  In the context of internet-based defamatory communications, including websites, relatedness is established if the defamatory communications were made available in the forum state and were viewed or apprehended there.  Scottsdale Cap. Advisors Corp. v. The Deal, LLC, 887 F.3d 17, 21 (1st Cir. 2018); Brown v. Dash, 2020 WL 6806433, at *9 (D. Mass. Nov. 18, 2020); Narcisi v. Turtleboy Digital Marketing, LLC, 2020 WL 5258491, at *3 (D.R.I. Sept. 3, 2020). When the defamatory materials are publicly available to a sufficient number of people, the court may presume that at least one person, other than the plaintiff, viewed and apprehended the defamatory nature of the communication.  Scottsdale, 887 F.3d at 22 (distinguishing Keeton).

De Laire alleges that the defendants defamed him in the articles and video published on the Church Militant website and that those publications also intentionally caused him emotional distress.  The website is available to the public and is not limited to members or subscribers.  Cf. Scottsdale, 887 F.3d at 21-22.  The defendants represent that Church Militant has 288

---

[6] "Defamation is made up of the twin torts of libel and slander—the one being, in general, written while the other in general is oral." McCarthy v. Manchester Police Dept., 168 N.H. 202, 210 (2015).

contributors in New Hampshire and does not dispute that the articles and the video published on the Church Militant website were viewed and understood by people in New Hampshire.[7]

Instead, the defendants focus on their residences and place of business in Michigan and contend that because they are located there, the claims arose in Michigan, not New Hampshire. De Laire points out that Voris traveled to New Hampshire to interview people about the dispute with the St. Benedict Center and that he published an allegedly defamatory video based on those interviews.  De Laire also contends that Carey's article shows that she had contacts with New Hampshire because she quotes New Hampshire residents.

A defendant need not be present in the forum state to engage in activity there for jurisdictional purposes. Astro-Med, Inc. v. Nihol Kohden Am., Inc., 591 F.3d 1, 10 (1st Cir. 2009).  Taken as a whole, the defendants' publication of allegedly defamatory statements on its website, which is available and, under the circumstances, is presumed to have been viewed and understood in New Hampshire, is contact related to de

---

[7] De Laire states in the complaint that he received "numerous phone calls and emails from parishioners, churchmilitant.com readers, and members of the public . . . [that] ranged from mere criticism to outright threats."  Doc. no. 1, ¶ 63.  For purposes of the current motion, the defendants do not dispute that de Laire received those communications because of their postings on the Church Militant website.

Laire's claims.[8]  Additional contacts by Voris and Carey with New Hampshire are related to de Laire's claims and augment the contacts necessary for the relatedness requirement.

    B.  Purposeful Availment

    For a defamation claim, the purposeful availment requirement is assessed based on the effects test. Calder v. Jones, 465 U.S. 783, 788-89 (1984); Brown v. Dash, 2020 WL 6806433, at *9-*10 (D. Mass. Nov. 18, 2020).  That is, the court determines where the effects of the defamation occurred – based on both the focal point of the defamatory story and where the harm caused by the defamation was suffered.  Calder, 465 U.S. at 89.  Purposeful availment "focuses on the defendant's intentionality," as occurred in Calder, where the defendant aimed a defamatory article at a resident of the forum and

_____

    [8] As is noted above, the parties do not address the intentional infliction of emotional distress claim.  Under New Hampshire law, a claim of intentional infliction of emotional distress requires proof that the defendants' conduct was extreme and outrageous and intentionally or recklessly caused him severe emotional distress.  Tessier v. Rockefeller, 162 N.H. 324, 341 (2011).  De Laire's claim is based on the same allegedly defamatory communications that are the basis for the defamation claim.  For that reason, the defendants' contacts with New Hampshire are also sufficient to satisfy the relatedness requirement for the intentional infliction of emotional distress claim.

published the article there, "knowing that the injury would be felt in the forum." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 624 (1st Cir. 2001).

In this case, the defendants targeted de Laire, a resident of New Hampshire, the pastor of a parish in New Hampshire, and a vicar in the Diocese of Manchester.  Their interest in de Laire arose from de Laire's professional activities, as a vicar, with the Saint Benedict Center in New Hampshire.  The defendants' allegedly defamatory communications pertained to de Laire's duties as a vicar and his duties as a priest and can be construed to have been intended to harm him in New Hampshire, as well as outside New Hampshire.  De Laire alleges that the defendants' actions have harmed his personal and professional reputation with his parishioners, viewers of the Church Militant website, members of the public, and members of the church hierarchy.  Therefore, the focal point of the allegedly defamatory communications was in New Hampshire, and the harm was felt in New Hampshire.

These activities and circumstances show that the defendants purposefully availed themselves of the privilege of conducting activities in New Hampshire.

C.  Reasonableness

The exercise of personal jurisdiction in the forum is reasonable if the five "Gestalt" factors are met.  Knox, 914 F.3d at 694.  Those factors are:

> (1) the defendant's burden of appearing [in the forum], (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Id.  The Gestalt factors "are designed to put in sharper perspective the reasonableness and fundamental fairness of exercising jurisdiction in particular situations."  Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994).

The defendants argue that it would be burdensome for them to defend against the claims in New Hampshire because they live and work in Michigan.  All defendants, however, will be inconvenienced to some extent by litigating outside their home state.  Id.  For that reason, to show that litigation in the forum state would impose a burden, a defendant must demonstrate "that an exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way."  Id.; accord C.W. Downer & Co. v. Bioriginal Food & Science Corp., 771 F.3d 59, 70 (1st Cir. 2014).

The defendants have not shown that the costs and effort
that may be necessary for travel between Michigan and New
Hampshire establish a burden for purposes of the reasonableness
requirement.  Id.  Voris provides no grounds to show that
litigating the case in New Hampshire would be onerous in a
constitutionally significant way.  Carey has not shown that her
parenting responsibilities are unusual and constitutionally
significant for purposes of opposing personal jurisdiction.
Therefore, the defendants have not demonstrated that litigating
in New Hampshire would put an unreasonable burden on them.

New Hampshire and de Laire have substantial interests in
adjudicating the dispute here and in obtaining relief.  De Laire
is a priest in New Hampshire and defamatory harm is alleged to
have occurred here, as well as in other places.  See O'Neil v.
Somatics LLC, 2020 WL 7043559, at *3 (D.N.H. Dec. 1, 2020)
(holding that because "the injury occurred in New Hampshire to a
New Hampshire resident, I have little trouble concluding that
the Gestalt factors weigh in favor of the exercise of
jurisdiction"). Further, the plaintiff's choice of forum is
entitled to deference.  Titus v. Tissue Culture Biologicals,
Inc., 2020 WL 8176308, at *6 (D.N.H. July 6, 2020).  The fourth
factor, pertaining to the judicial system's interest in the
case, is generally a "wash", as it is here because the case

13

could be addressed and resolved in either Michigan or New
Hampshire.  Id.

The Gestalt factors support the exercise of jurisdiction in
this district.


D.  Result

Because de Laire has satisfied all of the requirements for
specific personal jurisdiction over the defendants, the motion
based on a lack of personal jurisdiction is denied.


II.  Venue

The defendants also assert that the case should be
dismissed because venue is not proper in this district.  "A
civil action may be brought in . . . a judicial district in
which a substantial part of the events or omissions giving rise
to the claim occurred . . . ."  28 U.S.C. § 1391(b)(2).  For
purposes of a motion to dismiss for lack of proper venue, the
court takes the well-pleaded facts in the complaint as true and
resolves reasonable inferences in the plaintiff's favor.
Johnson v. Gen. Dynamics Info. Tech., Inc., 675 F. Supp. 2d 236,
239 (D.N.H. 2009).  Courts in the First Circuit hold that the

plaintiff bears the burden of showing that venue is proper.[9] Little Kids, Inc. v. 18 Ave. Toys, Ltd., 2020 WL 7264267, at *12 (D.R.I. Dec. 10, 2020).

For venue to be proper, a substantial part of the events giving rise to the plaintiff's claim must occur in the forum, but proper venue does not require that the forum district be the best venue because more than one district may provide proper venue. Uffner v. La Reunion Francaise, S.A., 244 F.3d 38, 42 (1st Cir. 2001); see also Post Acute Med., LLC v. LeBlanc, 826 F. App'x 163, 165 (3d Cir. 2020); Brito v. Major Energy Elec. Servs., LLC, --- F. Supp. 3d ---, 2021 WL 1060283, at *10 (D. Md. Mar. 18, 2021); Weiser Law Firm v. Hartleib, 2020 WL 5993628, at *20 (E.D. Pa. Oct. 9, 2020).  In the context of defamation published on the internet, venue is proper in the district where the communication was initiated and in the district where the injured party resides and the defamatory communication was published.  Van Deelen v. Bloomber, L.P., 2021 WL 401201, at *3 (S.D. Ala. Jan. 8, 2021) (citing cases); Weiser Law Firm v. Hartleib, 2020 WL 6781941, at *3 (E.D. Pa. Nov. 17, 2020); see also Frey v. Minter, 829 F. App'x 432, 436 (11th Cir. 2020).  Therefore, the question is not, as the defendants pose

---

[9] Other courts put the burden on the defendant to show that venue is improper.  See, e.g., Bockman v. First Am. Mktg. Corp., 459 F. App'x 157, 160 (3d Cir. 2012).

it, whether venue would be better in Michigan.  Instead, the question is whether a substantial part of the events underlying de Laire's claim occurred in New Hampshire.

As is noted in the context of personal jurisdiction, the allegedly defamatory articles and video were published in New Hampshire.  Information for the articles was collected in or from New Hampshire.  The alleged defamation involves de Laire's actions pertaining to the Saint Benedict Society in New Hampshire and his duties and actions as a priest in New Hampshire.  De Laire felt the effects of the alleged defamation in New Hampshire.  In sum, a substantial part of the events giving rise to de Laire's defamation claim, and his claim for intentional infliction of emotion distress, arose in New Hampshire.

Therefore, venue is proper in this district.


### Conclusion

For the foregoing reasons, the defendants' motion to dismiss (document no. 8) is denied.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

April 1, 2021

cc:  Counsel of record.