```
               UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF NEW HAMPSHIRE
```

George F. de Laire

    v.                                              Civil No. 21-cv-131-JD
                                                          Opinion No. 2021 DNH 124

Gary Michael Voris, et al.

## O R D E R

The Very Reverend Georges F. de Laire, J.C.L. brings claims for defamation and intentional infliction of emotional distress against Gary Michael Voris, Anita Carey, and St. Michael's Media, a/k/a Church Militant. In support, de Laire alleges that the defendants have published defamatory articles and a video about him that arose from a doctrinal dispute between the group known as the Slaves of the Immaculate Heart of Mary, which is incorporated as the Saint Benedict Center, Inc., and officials of the Catholic Church. The defendants move to dismiss the claims on the ground that the allegations, taken as true, do not state a cause of action for either claim. De Laire objects.

## Standard of Review

The defendants' motion to dismiss for failure to state a claim is brought pursuant to Federal Rule of Civil Procedure 12(b)(6). Because the defendants filed an answer before filing the motion, however, the motion should have been filed pursuant

to Federal Rule of Civil Procedure 12(c).  Villeneuve v. Avon Prods., Inc., 919 F.3d 40, 49 (1st Cir. 2019).  The same standard applies to both motions.

When considering a Rule 12(c) motion for judgment on the pleadings, the court takes all properly pleaded allegations as true and resolves reasonable inferences from those allegations in favor of the plaintiff.  Id.; see also Zhao v. CIEE Inc., --- F.4th ---, 2021 WL 2643410, at *2 (1st Cir. June 28, 2021) (providing standard for dismissal under Rule 12(b)(6)).  Based on that view of the complaint, the court determines whether the plaintiff has stated a plausible claim for relief.  Villeneuve, 919 F.3d at 49.  "Plausibility demands that the factual allegations 'be enough to raise a right to relief above the speculative level.'"  Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Background

Church Militant is identified as a Michigan not-for-profit corporation that posts articles, videos, and podcasts on a website, churchmilitant.com.  Gary Michael Voris is the president of Church Militant.  Anita Carey was a staff reporter for Church Militant from March of 2017 to November of 2019.

De Laire is a priest in the Catholic Church and the pastor of a parish in Manchester, New Hampshire.  He also serves as the

2

Judicial Vicar and the Vicar for Canonical Affairs for the Diocese of Manchester.  De Laire and the Bishop of the Diocese of Manchester are the Tribunal, a judicial body, for the Diocese of Manchester.  De Laire oversees matters brought before the Tribunal that are generally challenges to the canonical validity of marriages but also include other matters.  He also has the responsibility of promoting and protecting the rights of the faithful in the Diocese of Manchester.  In those roles, de Laire's duties have included interaction with the Saint Benedict Center, Inc.

De Laire alleges that Church Militant identifies itself as doing "battle against sin, the devil and the 'demonic rulers of the darkness of this world, against spiritual wickedness in high places.'"  Doc. 1, ¶ 20.  De Laire includes further information about Church Militant as espousing extremist views.  De Laire further alleges that the Saint Benedict Center is loyal to the teachings of Father Leonard Feeney, who was a priest in the 1940s and founded the Slaves of the Immaculate Heart of Mary.  Feeney was expelled from the Jesuit order and then excommunicated from the Catholic Church because of his incendiary and anti-Semitic views.

A doctrinal dispute arose in 2016 between the Saint Benedict Center and the Diocese of Manchester about the Center's

3

interpretation of the phrase "extra ecclesiam nulla salus."[1]  As a result, the Congregation for the Doctrine of the Faith in Rome declared the Saint Benedict Center's interpretation unacceptable.  Effective January 7, 2019, de Laire placed restrictions ("precepts") on the Saint Benedict Center because of their failure to follow the decisions made by the Congregation for the Doctrine of the Faith, which included prohibiting the Center from using any reference to itself as associated with the faithful in the Roman Catholic Church, from using the name Catholic, and from having any sacramental celebrations at the Center.  De Laire continued to work with the Saint Benedict Center and offered to have a priest in good standing provide ministry there.

Church Militant published an article about de Laire dated January 17, 2019, that addressed de Laire's role in the church's interactions with the Saint Benedict Center.[2]  The article featured a photograph of de Laire and is titled "NH Vicar Changes Dogma into Heresy" with a subtitle of "Fr. George de Laire cracks down on Saint Benedict Center."  In the article, Voris accused de Laire of changing "a solemnly defined dogma of

---

[1] In a video published by Church Militant, Voris translated the dogma to mean "outside the Church there is no salvation."

[2] The article does not identify its author, but de Laire alleges that Voris wrote the article.

4

the Faith into a heresy" and of improperly interpreting church doctrine as applied to the Saint Benedict Center.  Doc. no. 1-3, at *2.  Voris further accused de Laire of waiting until Bishop Peter Libasci was in Chicago for a meeting to impose fifteen precepts on the Saint Benedict Center.

The article went on to claim that "work colleagues" of de Laire said he was emotionally unstable and that he was using the St. Benedict Center dispute to repair his image.  The article also said that there had been three complaints lodged against de Laire over several years which alleged corruption, abuse of office, violations of the law, and incompetence.  Voris claimed to have learned that de Laire was outsourcing his work and that he was vindictive and manipulative.[3]

In the last paragraph of the article, Voris wrote that "[a]dditional questions are raised" by de Laire acquisitions.  Voris stated that while Pope Francis was living at a hotel rather than the Apostolic Palace, de Laire lives at an estate near Manchester, New Hampshire, that he recently purchased.  Voris stated that the estate is valued at 1.5 million dollars.

After that article was published, Voris travelled to New Hampshire in April of 2019 to interview members and supporters of the Saint Benedict Center about de Laire's actions and made a

---

[3] The article is attributed to Church Militant without identification of the author.

5

video about de Laire.  Church Militant published the video on April 15, 2019, which de Laire contends includes defamatory statements about him.  The video is titled "Attacking the Good Guys Who Are Fighting Back" and was published on Church Militant's website and then was published on other websites.

In the video, Voris stated that the diocese of Manchester was attacking the Saint Benedict Center because of their adherence to a dogma known as "Extra Ecclesiam Nulla Salus" that Voris translated as "outside the Church there is no salvation." Voris identified de Laire as the person who was responsible for attacking the Saint Benedict Center.  Voris stated that "Diocesan insiders tell Church Militant the attacks are designed in part by de Laire to improve his image in Rome so he can climb the ladder and be promoted.  So he whipped up some spurious claims of heresy against the community and began hurling weighty canonical measures against its members in an effort to gain attention."  [www.churchmilitant.com/video/episode/vortex-attacking-the-good-guys](www.churchmilitant.com/video/episode/vortex-attacking-the-good-guys) (last visited Aug. 9, 2021).  Voris stated that de Laire took advantage of a "misunderstanding" and issued a letter "stripping the [Saint Benedict Center] of its ability to have a dioscesan-approved priest offer daily Mass, which had been the case for close to a decade."  Id.

On June 25, 2019, Church Militant published another article, which was written by Anita Carey.  Carey reported the

6

demolition of St. Joseph's Catholic Church in Laconia, New Hampshire.  Carey stated that de Laire disagreed with the interpretation of canon law offered by a lawyer in Mobile, Alabama, and approved the demolition.  Carey stated that de Laire had previously targeted the Saint Benedict Center.  Carey repeated that complaints had been lodged against de Laire which alleged corruption, abuse of office, violations of the law, and incompetence.  Carey also repeated that de Laire owned an expensive home and added that a tax lien had been placed on it.

De Laire brought suit against Church Militant, Voris, and Carey, alleging that the articles and video defamed him and caused intentional infliction of emotional distress.  The defendants moved to dismiss for lack of personal jurisdiction, which was denied.  They now move to dismiss for failure to state actionable claims.

## Discussion

In support of the motion to dismiss, the defendants contend that some of the statements that de Laire challenges are opinions and other statements are true so that they do not support a claim for defamation.  They contend that the allegations also do not support a claim for intentional infliction of emotional distress because they do not show actions that are either extreme or outrageous.  De Laire objects

7

to the motion on the grounds that the alleged statements are defamatory and sufficient to support a claim for intentional infliction of emotional distress.

A.  Defamation

To state a claim for defamation under New Hampshire law, a plaintiff must allege facts to show that the defendants did not exercise reasonable care when they published a false and defamatory statement about the defendant to a third party.[4] Martin v. Mooney, 448 F. Supp. 3d 72, 84 (D.N.H. 2020). Generally, a defamatory statement must be both false and factual, not a statement of opinion. Automated Transactions, LLC v. Am. Bankers Ass'n, 172 N.H. 528, 532-33 (2019). A statement of opinion may be actionable, however, if "it may reasonably be understood to imply the existence of defamatory fact as the basis for the opinion." Id. at 532. Whether a statement is a verifiable fact or an opinion may be decided by the court as a matter of law. Id. at 533; see also Piccone v. Bartels, 785 F.3d 766, 772 (1st Cir. 2015).

---

[4] The defendants do not contend that de Laire is a public figure. Therefore, the private figure defamation standard applies. Cf. Lemelson v. Bloomberg L.P., 903 F.3d 19, 23-24 (1st Cir. 2018) (providing defamation standard in context of public figure).

1. True or False

The defendants contend that their statements that de Laire no longer permits daily mass for the Saint Benedict Center members and that de Laire lives on an estate worth $1.5 million are not defamatory because they are true. De Laire does not dispute the truth of those statements. Instead, he argues that taken in context the statements give false implications and innuendo that are defamatory.

"[D]efamation can occur by innuendo as well as by explicit assertion." Brown v. Hearst Corp., 54 F.3d 21, 25 (1st Cir. 1995) (noting defamatory nature of television broadcast suggesting man murdered his wife without actually accusing him of murder); Soni v. Wespiser, 239 F. Supp. 3d 373, 388-89 (D. Mass. 2017) (statements that plaintiff filed prior lawsuits, while true, implied defamatory meaning that plaintiff was litigious and filed frivolous lawsuits). To support defamation by innuendo, "the words used . . . are to be considered together with their context and must be taken in the sense in which they are reasonably understood under the circumstances by persons familiar with the language used." Chagnon v. Union Leader Corp., 103 N.H. 426, 434 (1961).

      a.   Daily Mass

As is described above, in a video produced by the defendants, Voris states that de Laire stopped daily mass at the Saint Benedict Center. De Laire asserts that statement is false and defamatory because he arranged for a priest to provide a Latin Mass for the Saint Benedict Center members at a nearby parish on a weekly basis. He argues that the implication of the statement that he stopped daily mass is that he deprived the Saint Benedict Center members of access to any mass or that he used his office improperly to accomplish that result. De Laire contends that the statements about mass must be taken in the larger context of the defendants' accusations against him.

Simply put, Voris's statement that de Laire stopped daily mass at the Center is true. Although there is more to the story than that, it remains true that there is no longer daily mass at the Center. The larger context of the defendants' statements, including their use of the term "attack" in the video and Voris's attribution of improper motives to de Laire, do not make the true statement about how often mass is offered defamatory.

      b.   De Laire's Residence

With respect to defamatory statements about de Laire's residence, de Laire cites Voris's article published in January of 2019. Voris first accuses de Laire of a variety of misdeeds

10

and character flaws, including corruption and abuse of his office.  The article then states:  "Additional questions are raised, however, not just by the recent decisions of the vicar [de Laire] affecting Catholic faithful under his power, but also by his acquisitions."  Doc. 1-3, at *5.  The article notes that Pope Francis stayed at a hotel instead of "the Apostolic Palace" while de Laire bought and lives at "an estate located near Manchester . . . currently valued at $1.5 million; an exclusive 4,000-square-foot, four-bedroom residence with 600 feet of waterfront, waterfalls and a koi pond."  Id.

De Laire contends that by introducing the description of his home with the phrase "[a]dditional questions are raised," the defendants are suggesting by innuendo that there was something improper about his purchase of that property.  He asserts that his purchase of the property was proper, contrary to the gist of Voris's article.  The defendants focus on the comparison between Pope Francis's "humble lodging" and de Laire's home and argue that the comparison is appropriate.

Taken in the context of Voris's article, the statements about de Laire's home could be interpreted to raise questions about how de Laire purchased the home, and those statements reasonably could be linked to the accusation of corruption.  Although the description of de Laire's home also could be interpreted as criticism of de Laire's lifestyle while the Pope

lives modestly that is not the only reasonable meaning. Therefore, taking the allegations in the light most favorable to de Laire, the statements about de Laire's home could carry a defamatory innuendo.

### 2. Fact or Opinion

In support of their motion to dismiss, the defendants contend that certain statements are mere opinions that are not actionable defamation.  Specifically, the defendants contend that "[s]tatements questioning de Laire's competence as a canon lawyer and labeling him as 'unstable,' 'manipulative' 'vindictive' 'trouble maker' or a 'careerist' are all clearly protected expressions of opinion because none of these statements is objectively verifiable."  Doc. no. 18, at *5 (footnote omitted).  The defendants also assert that a statement that de Laire "botched" cases is also opinion.

The statements are attributed to unnamed sources, including members of the Roman Curia and de Laire's work colleagues who are priests and laity.  De Laire contends that those statements are actionable defamation because there are no sources for the statements, the asserted sources of the information never made the attributed statements, and because the underlying statements are false and defamatory.  De Laire also contends that the

purported sources of the statements are an important part of the defamatory impact because of their status as clergy.

To begin, the challenged statements published by the defendants are attributed to third parties. In these circumstances, "[t]here are various vantages from which the statement could be attacked as false (e.g., that no such view was expressed by the unnamed executive)" or by showing that the underlying statement was false. Gray v. St. Martin's Press, 221 F.3d 243, 248 (1st Cir. 2000). De Laire contends that the people to whom those statements are attributed never made the statements so that the attribution is false. That is an actionable claim.

### B. Intentional Infliction of Emotional Distress

De Laire alleges that the defendants' "campaign of lies, disparagement, defamation, harassment, intimidation, and maliciousness" amounts to intentional infliction of emotional distress. Doc. 1, at *18. The defendants move to dismiss on the ground that the alleged actions are not the extreme conduct that is necessary to support the claim. De Laire contends that the defendants' actions are sufficiently extreme to support the claim.

To state a claim for intentional infliction of emotional distress under New Hampshire law, a plaintiff must allege facts

13

that show that a defendant "'by extreme and outrageous conduct, intentionally or recklessly cause[d] severe emotional distress to another.'" Tessier v. Rockefeller, 162 N.H. 324, 341 (2011) (quoting Morancy v. Morancy, 134 N.H. 493, 496 (1991)). Actionable conduct must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Id. (quoting Mikell v. Sch. Admin. Unit No. 33, 158 N.H. 723, 729 (2009)). In addition, the plaintiff must allege facts to show that the distress he experienced due to actionable conduct was severe. Delima v. Google, Inc., 2021 WL 294560, at *8 (D.N.H. Jan. 28, 2021).

Although neither party has raised the issue, the First Circuit has held that New Hampshire does not recognize a separate cause of action for intentional infliction of emotional distress when the plaintiff brings a defamation claim for the same harm to the plaintiff's reputation. Moss v. Camp Pemigewassett, Inc., 312 F.3d 503, 510 (1st Cir. 2002). That is the situation here. De Laire alleges that the defendants intentionally published defamatory statements about him for the purpose of hurting his professional and personal reputation as the bases for both his defamation and intentional infliction of emotional distress claims. Both claims cannot proceed under New

14

Hampshire law.  Therefore, it is appropriate to dismiss the intentional infliction of emotional distress claim because de Laire seeks the same relief in his defamation claim.

## Conclusion

For the foregoing reasons, the defendants' motion to dismiss (document no. 18) is granted in part and denied in part. That part of the defamation claim in Count I that is based on the statement that de Laire prohibited daily mass is dismissed. Count II, the claim for intentional infliction of emotional distress, is also dismissed.  The motion is otherwise denied.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

August 11, 2021

cc:  Counsel of record.