UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Georges F. de Laire, J.C.L.

    v.                          Case No. 21-cv-131-JD

Gary Michael Voris, et al.

# O R D E R

The Very Reverend Georges F. de Laire, J.C.L., who serves as the Judicial Vicar and the Vicar for Canonical Affairs for the Diocese of Manchester, brings a claim for defamation against Gary Michael Voris, Anita Carey, and St. Michael's Media, Inc. a/k/a Church Militant. In support, de Laire alleges that the defendants published defamatory articles and a video about him because of a doctrinal dispute between a group known as the Slaves of the Immaculate Heart of Mary, which is incorporated as the Saint Benedict Center, Inc., and officials of the Catholic Church. De Laire moves to compel the defendants to answer interrogatories. The defendants object.

## Standard of Review

Under the federal rules, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). After providing notice and making the necessary effort to resolve the discovery issue, a

party may move to compel another party to produce requested information or documents. Fed. R. Civ. P. 37(a)(1) & 37(a)(3)(B). The moving party bears the burden of making an initial showing that the requested documents are relevant, and if that showing is made, the opposing party bears the burden of showing that the requested production is improper. Philips Med. Sys. P.R., Inc. v. Alpha Biomedical & Diagnostic Corp., 2021 WL 150411, at *4 (D.P.R. Jan. 15, 2021); Caouette v. OfficeMax, Inc., 352 F. Supp. 2d 134, 136 (D.N.H. 2005). The court has broad discretion in managing discovery disputes and may decline to compel discovery when appropriate. Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd., 333 F.3d 38, 41 (1st Cir. 2003).

To prove a claim for defamation under New Hampshire law when the plaintiff is not a public figure, a plaintiff must "'show that the defendants[s] failed to exercise reasonable care in publishing a false and defamatory statement of fact about [the plaintiff] to a third party.'" Automated Transactions, LLC v. Am. Bankers Assoc., 172 N.H. 528, 532 (2019) (quoting Cluff-Landry v. Roman Catholic Bishop of Manchester, 169 N.H. 670, 678 (2017)); see also Martin v. Mooney, 448 F. Supp. 3d 72, 84 (D.N.H. 2020). A false statement is defamatory if it "tend[s] to lower the plaintiff in the esteem of any substantial and respectable group, even though it may be quite a small minority." Thomson v. Cash, 119 N.H. 371, 653 (1979); see also

Gray v. St. Martin's Press, Inc., 221 F.3d 243, 250 (1st Cir. 2000) (applying New Hampshire law). Further, a false statement is defamatory per se if it would tend to injure the plaintiff in his trade or profession. MacDonald v. Jacobs, 171 N.H. 668, 674 (2019); Krishnan v. Blueprint Healthcare LLC, 2021 WL 4255359, at *8 (D. Mass. Sept. 17, 2021) (applying New Hampshire law); Martin v. Mooney, 448 F. Supp. 3d 72, 84 (D.N.H. 2020).


## Background

Church Militant is identified as a Michigan not-for-profit corporation that posts articles, videos, and podcasts on a website, churchmilitant.com. Gary Michael Voris is the president of Church Militant. Anita Carey was a staff reporter for Church Militant from March of 2017 to November of 2019.

De Laire is a priest in the Catholic Church and the pastor of a parish in Manchester, New Hampshire. He also serves as the Judicial Vicar and the Vicar for Canonical Affairs for the Diocese of Manchester. De Laire and the Bishop of Manchester together form the Tribunal. De Laire oversees matters brought before the Tribunal that are generally challenges to the canonical validity of marriages but also include other matters. He also has the responsibility of promoting and protecting the rights of the faithful in the Diocese of Manchester. In those roles, de Laire's duties have included interaction with the

religious group known as the Slaves of the Immaculate Heart of Mary, which is incorporated as the Saint Benedict Center, Inc.

A doctrinal dispute arose in 2016 between the Saint Benedict Center and the Diocese of Manchester. De Laire handled the matter for the Diocese. When the dispute was not resolved, sanctions were placed on the Saint Benedict Center.

Church Militant published an article about de Laire dated January 17, 2019, that addressed de Laire's role in the church's interactions with the Saint Benedict Center.[1] In the article, Voris claims that "work colleagues" of de Laire said he was emotionally unstable and that he was using the St. Benedict Center dispute to repair his image. The article also said that there had been three complaints lodged against de Laire over several years which alleged corruption, abuse of office, violations of the law, and incompetence. Voris claimed to have learned that de Laire was outsourcing his work and that he was vindictive and manipulative.

In the last paragraph of the article, Voris wrote that "[a]dditional questions are raised" by de Laire's property. Voris stated that de Laire was living at an estate near Manchester, New Hampshire, that he recently purchased. Voris stated that the estate is valued at 1.5 million dollars.

---

[1] The article does not identify its author, but de Laire alleges that Voris wrote the article.

After that article was published, Voris travelled to New
Hampshire in April of 2019 to interview members and supporters
of the Saint Benedict Center about de Laire's actions and made a
video about de Laire.  Church Militant published the video on
April 15, 2019, which de Laire contends includes defamatory
statements about him.  The video is titled "Attacking the Good
Guys Who Are Fighting Back" and was published on Church
Militant's website and then was published on other websites.

In the video, Voris stated that the Diocese of Manchester,
through de Laire, was attacking the Saint Benedict Center
because of the doctrinal dispute.  Voris stated that "Diocesan
insiders tell Church Militant the attacks are designed in part
by de Laire to improve his image in Rome so he can climb the
ladder and be promoted.  So he whipped up some spurious claims
of heresy against the community and began hurling weighty
canonical measures against its members in an effort to gain
attention."  [www.churchmilitant.com/video/episode/vortex-attacking-the-good-guys](www.churchmilitant.com/video/episode/vortex-attacking-the-good-guys) (last visited Aug. 9, 2021).  Voris
stated that de Laire took advantage of a "misunderstanding" and
issued a letter "stripping the [Saint Benedict Center] of its
ability to have a dioscesan-approved priest offer daily Mass,
which had been the case for close to a decade."  Id.

On June 25, 2019, Church Militant published another
article, which was written by Anita Carey.  Carey's report was

about the demolition of a church in Laconia, New Hampshire, which had been approved by de Laire. Carey stated that de Laire had previously targeted the Saint Benedict Center. Carey repeated that complaints had been lodged against de Laire which alleged corruption, abuse of office, violations of the law, and incompetence. Carey also repeated that de Laire owned an expensive home and added that a tax lien had been placed on it.

De Laire brought a defamation claim against the defendants that challenges the statements made in the articles and the video. De Laire has propounded interrogatories and requests for production to the defendants, in six separate sets, asking for information about the investigation the defendants conducted before publishing the challenged statements and about the sources of the challenged statements, among other things. In response to many of the interrogatories and requests for production, the defendants objected on grounds that the request was overbroad and unduly burdensome and the information sought was protected by the newsgathering privilege and the First Amendment.

Discussion

In his motion to compel, de Laire primarily challenges the defendants' invocation of the newsgathering privilege and

asserts that the privilege does not apply in this case.[2]  He asks

for an anticipatory ruling that the privilege cannot be invoked

during depositions.  Alternatively, de Laire asks the court to

order the defendants to respond to the discovery except to the

extent the court finds that a narrow newsgathering privilege may

protect the identity of confidential sources.  The defendants

object to the motion on the grounds that Church Militant is a

member of the press and that the newsgathering privilege

protects them from the discovery de Laire seeks.


    A.   Scope of Motion

    To the extent de Laire is seeking a general ruling that the

newsgathering privilege cannot be invoked for any purpose in

this case, that relief is not available in the context of the

motion to compel discovery responses.  Instead, in response to a

motion to compel, the court decides whether an objection or

privilege protects the information or documents requested.  If

the privilege is invoked in other contexts, de Laire will have

the opportunity to move for relief at the appropriate time.

_____

[2] Although de Laire challenges the objections to
interrogatories and requests for production as over broad and
unduly burdensome, he provides no developed argument as to each
request to counter the objections raised.  A review of the
requests and responses, however, demonstrates that those
objections have likely been improperly raised by the defendants.

B. <u>Invocation of Privilege as to Pending Discovery</u>

Because this is a defamation case brought under New Hampshire law, New Hampshire law governs issues of privilege. Fed. R. Evid. 501. New Hampshire recognizes a newsgathering or reporter's privilege under the New Hampshire Constitution. <u>Mortgage Specialists, Inc. v. Implode-Explode Heavy Indus., Inc.</u>, 160 N.H. 227, 233 (2010). In a defamation case, "there is no absolute privilege allowing the press to decline to reveal sources of information when those sources are essential" to the plaintiff's case. <u>Downing v. Monitor Publishing CO., Inc.</u>, 120 N.H. 383, 386. Sources are essential when there is a genuine issue as to the truth or falsity of the publication and when the party moving to compel seeks damages for defamation against the party invoking the privilege. <u>Mortgage Specialists</u>, 160 N.H. at 34-35; <u>Howard v. Antilla</u>, 191 F.R.D. 39, 44 (D.N.H. 1999). Different considerations pertain to application of the newsgathering privilege in criminal cases and when the press is not a party to a defamation action. <u>Mortgage Specialists</u>, 160 N.H. at 235.

Here, de Laire is seeking damages from the defendants for defamation. Therefore, the newsgathering privilege in this case is qualified and subject to the considerations provided in <u>Downing</u>. Under <u>Downing</u>, a reporter will not be required to disclose sources of allegedly defamatory statements if the claim

8

of falsehood is entirely baseless.  120 N.H. at 387.  To show
that truth or falsity is genuinely in dispute, a party opposing
the privilege must make a proffer that evidence exists to show
falsity.  Id.  A proffer of evidence of falsity does not require
proof of falsity but instead is satisfied by a proffer that
shows the defamation claim is not baseless as to the alleged
defamation that is pertinent to the discovery requested.

De Laire challenges several statements published by the
defendants, which they attribute de Laire's colleagues and
church officials, that de Laire was incompetent in his
professional role, was emotionally unstable, outsourced his
work, and botched cases.  He also challenges statements that
complaints have been filed against him.  To prove defamation as
to the attributed statements, de Laire must show either that no
colleague or official made the attributed statements or that the
underlying information is false.  To prove falsity of the
statements about complaints, he must show that no such
complaints were filed.  For purposes of the attributed
statements, de Laire must learn who made the statements to the
defendants, in other words, de Laire must learn who the
defendants' sources are for those statements.  The statements
about complaints may also require information about the
defendants' sources.

At this point, the court would look at the specific discovery requested by de Laire in light of the defamation alleged and the proffered evidence to determine whether falsity is genuinely disputed. De Laire, however, does not address each specific discovery request to make a proffer as to evidence that will show falsity.[3] Instead, he refers generally to his papers opposing the defendants' motions to dismiss and states generally that he will prove the statements are false. As such, he has not shown that the defendants should be compelled to provide specifically requested information or documents.

On the other hand, the defendants did not properly respond to the discovery de Laire propounded. A response to discovery that invokes a privilege must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). The defendants did not provide that information. In addition, a

_____

[3] In this district, a party moving to compel discovery responses is required to provide "a verbatim recitation" or a copy of the <u>disputed</u> discovery request or question but shall not file other parts of the discovery that is not at issue. LR 37.1(a). De Laire filed three entire sets of interrogatories and responses and three entire sets of requests for production and responses. Only some of the defendants' responses invoke the newsgathering privilege. De Laire's submission of all discovery, not just the disputed parts, violates the rule.

cursory review of the requests where privilege is invoked shows that at least some of the information and documents sought would not be protected by the newsgathering privilege and should have been provided.

## Conclusion

For the foregoing reasons, the plaintiff's motion to compel (document no. 60) is denied without prejudice.

**On or before December 23, 2021,** the defendants shall serve revised responses to de Laire's interrogatories and requests for production of documents in light of the qualified newsgathering privilege stated in this order. The defendants shall provide answers and produce documents in response to all discovery that does not implicate that privilege and is not subject to another objection. To the extent the privilege is invoked, the defendants shall comply with Federal Rule of Civil Procedure 26(b)(5)(A)(ii).

If de Laire is not satisfied with the revised responses, counsel shall confer about the discovery issues and use their best efforts to resolve or at least to narrow the issues. In the event counsel are unable to resolve all of the discovery issues, de Laire may file a new motion to compel responses that addresses those specific issues in dispute, as follows:

1.   Address specific disputed discovery requests by number as to each defendant.  For example, if in the revised responses Voris invokes the newsgathering privilege and de Laire challenges that response, he shall address that specific response by number with an analysis as to why the privilege was not properly invoked in that context.

2.   File as exhibits ONLY the discovery responses, with the corresponding requests, that are disputed in the motion.  Label the exhibits properly.  For example, Exhibit A, Voris Interrogatory Responses.

3.   If de Laire challenges a response due to an objection that the request is overly broad or unduly burdensome, he shall address each such request and response individually by number with developed arguments.

4.   To the extent discovery requests to each of the defendant and the responses are the same, and therefore might be addressed together, identify the request and response by number as to each defendant.

Counsel's demonstrated inability to follow the local rules, the federal rules, and even court orders in this case is a cause for concern.  Their careless practice has caused additional work for the court and delay in the progress of the case.  Counsel are on notice and are reminded, again, that failure to comply with rules and orders may result in sanctions.

**SO ORDERED.**

_____
Andrea K. Johnstone
United States Magistrate Judge

November 29, 2021

cc:  Counsel of Record