```
              UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF NEW HAMPSHIRE


Georges F. de Laire

     v.                          Civil No. 21-cv-131-JD
                                 Opinion No. 2021 DNH 186
Gary Michael Voris, et al.
```

O R D E R

The Very Reverend Georges F. de Laire, J.C.L., who serves as the Judicial Vicar and the Vicar for Canonical Affairs for the Diocese of Manchester, brings a defamation claim against Gary Michael Voris, Anita Carey, and St. Michael's Media, Inc. a/k/a Church Militant. In support, de Laire alleges that the defendants published defamatory articles and a video about him because of a doctrinal dispute between a religious group in New Hampshire and officials of the Catholic Church. The defendants served the Diocese of Manchester, which is not a party in the case, with a subpoena under Federal Rule of Civil Procedure 45, seeking documents for discovery, and now move to compel the Diocese to comply with the subpoena. The Diocese objects.

Standard of Review

A subpoena to a nonparty must comport with the scope of discovery under Federal Rule of Civil Procedure 26(b)(1). Katz v. Shell Energy N. Am. (US), LP, --- F. Supp. 3d ---, 2021 WL

4477626, at *1 (D. Mass. Sept. 30, 2021). In that regard, the documents or information subject to the subpoena must not be privileged, must be relevant to a party's claim or defense, and must be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Further, the party who issues the subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). In determining whether the subpoena imposes an undue burden, courts examine the relevance of and need for the documents sought, the benefits of the request, and the expense and inconvenience of compliance. Katz, 2021 WL 4477626, at *1.

## Background

As the Judicial Vicar and the Vicar for Canonical Affairs for the Diocese of Manchester, de Laire serves with the Bishop of the Diocese of Manchester in a judicial body, the Tribunal, for the Diocese of Manchester.[1] As part of his official duties, de Laire has had interactions since 2016 with a religious group in New Hampshire known as the Slaves of the Immaculate Heart of Mary, incorporated as the Saint Benedict Center, Inc. He

---

[1] The Diocese states that it is composed of the Most Reverend Peter Anthony Libasci and the Roman Catholic Bishop of Manchester, a Corporation Sole.

eventually placed sanctions on the group because of a doctrinal dispute with the Catholic Church.

The defendant, Church Militant, is identified as a Michigan not-for-profit corporation that posts articles, videos, and podcasts on a website, churchmilitant.com. Gary Michael Voris is president of Church Militant. Anita Carey was a reporter for Church Militant from March of 2017 to November of 2019.

Church Militant published an article about de Laire dated January 17, 2019, that criticized de Laire's role in the church's interactions with the Saint Benedict Center and the sanctions imposed. After that article was published, Voris travelled to New Hampshire in April of 2019 to interview members and supporters of the Saint Benedict Center about de Laire's actions and made a video about de Laire, which was published on April 15, 2019. On June 25, 2019, Church Militant published another article, which was written by Anita Carey, that challenged de Laire's interpretation of canon law, his interactions with the Saint Benedict Center, and reported that complaints had been lodged against him, among other things.

De Laire brought suit against Church Militant, Voris, and Carey, alleging that the articles and video defamed him. The defendants served a subpoena on the Diocese of Manchester with six requests for documents. The Diocese provided some documents but also objected to the requests.

Discussion

The defendants move to compel the Diocese to comply with their requests in the subpoena that are numbered 1, 2, 3, and 5. The Diocese objects.

A. Request 1

In Request 1, the defendants sought:

All documents related to or concerning any complaint made against or about de Laire, by any person or entity, concerning any manner, at any time. "Complaint" is to be given its broadest possible meaning and encompasses any document where de Laire's performance or behavior is questioned or criticized.

Doc. no. 46-2, at *2.  The Diocese provided the following response:

The Subpoena Recipients incorporate and restate all of the objections above.  They state further that the request is vague, ambiguous, overly broad, and unduly burdensome to the extent that "complaint" is undefined, disproportional and not tailored to the subject matter in the underlying suit, not reasonably calculated to discover admissible evidence, and does not describe with reasonable particularity the topics for examination.[2]

---

[2] The defendants did not provide the Diocese's general objections that were in an introductory section of their responses.  When challenged for failing to do so, the defendants argued that the Diocese should not have included boilerplate objections.  The matters addressed under the heading "General Objections" are not "boilerplate" and instead include issues about the scope of a subpoena under Rule 45, privilege, privacy of health information, and confidentiality.  The defendants were required to submit that section.

4

Id.  In its objection, the Diocese contends that the defendants amended the scope of Request 1, which is demonstrated by an email from defendants' counsel dated July 2, 2021.  The defendants do not acknowledge that amendment in their motion.

The defendants assert that the request is relevant to de Laire's allegation that they defamed him by reporting that "at least three complaints against de Laire have been filed with the Holy See . . . [t]ogether they allege corruption, abuse of office, grave violations of the law, and incompetence as a canonist."  Doc. no. 1, ¶ 58.  They further assert that they specified that they were looking for annulment complaints and that the Diocese did not deny such complaints existed, but the Diocese has not produced them.  They state that the Diocese said it searched for other complaints but found none, when the Saint Benedict Center produced complaints that its members filed against de Laire.

As written, Request 1 is overbroad and not proportional to the needs of the case.  If the request has been narrowed or redefined by agreement, which appears to be the case, that would be material to the court's consideration of whether to enforce the subpoena with respect to Request 1.  Further, to the extent the defendants are aware of and are seeking specific complaints or documents, they should address those matters directly rather

5

than in a footnote.  As presented, however, the Diocese cannot be compelled to provide additional responses to Request 1.

B.  Request 2

Request 2 states:  "De Laire's employment or personnel file."  Doc. no. 46-2, at *2.  The Diocese responded as follows:

> The Subpoena Recipients incorporate and restate all of the objections above.  They state further that the request is vague, ambiguous, overly broad, and unduly burdensome to the extent that the term "personnel file" is undefined, disproportional and not tailored to the subject matter in the underlying suit, not reasonably calculated to discover admissible evidence, and does not describe with reasonable particularity the topics for examination.  For example, priests are not subject to state and federal employment laws because they are ministers exempt from such laws pursuant to the establishment and free exercise clauses of the First Amendment, and consequently, the term "employment or personnel file" is ambiguous. Moreover, the request is an entanglement with the internal affairs of a religious organization and its minister in violation of the First Amendment.

Id.  In its objection, the Diocese reiterates that no personnel or employment file exists, states that it has produced some responsive information, and states that information about the relationship between de Laire and the church is protected under the First Amendment.

The defendants responded in the motion to compel that when they were informed that no personnel file exists, they amended the request to ask for "any records related to de Laire's discipline, assignments and medical treatment, including

6

referrals of de Laire to treatment." Doc. no. 46-7, at *5. In support, the defendants cite an email chain between counsel. The emails indicate that counsel for the defendants asked about medical records as part of a personnel file and was told that counsel did not know if medical records existed and that those records should be obtained from de Laire. The emails do not mention discipline or referrals for treatment.

Once again, if Request 2 has been modified, the defendants should have provided the modified request and the Diocese's response to the court, in a straightforward and clear manner. The defendants' presentation of the dispute is not sufficiently clear to support an order compelling compliance. Further, based on other filings, it appears that de Laire has authorized the defendants to obtain his medical records from his providers, which would appear to obviate a need to obtain medical information from the Diocese.

### C. Request 3

The defendants asked for "[a]ll documents concerning the sanctions imposed against The St. Benedict Center, including without limitation all communications with the SBC or its agents, all internal communications within the diocese and all communications with any other organization or body." Doc. no. 46-2, at *2-*3. The Diocese responded as follows:

7

> The Subpoena Recipients incorporate and restate all of the objections above.  They state further that the request is vague, ambiguous, overly broad, and unduly burdensome and oppressive; disproportional and not tailored to the subject matter in the underlying suit; barred in whole or in part by the ecclesiastical abstention doctrine; not reasonably calculated to discover admissible evidence; and does not describe with reasonable particularity the topics for examination.  Subject to these objections, the subpoena recipients will produce information made public concerning sanctions imposed against SBC.

Id. at *3.  In the motion to compel, the defendants contend that they are seeking information about sanctions imposed on the St. Benedict Center to defend against the claim that the characterization of the sanctions as an "attack" was defamatory.

1. Privilege

The Diocese asserts that the information the defendants are seeking is protected from disclosure by the ecclesiastical exemption, relying primarily on Watson v. Jones, 80 U.S. 679, 732-33 (1871).³  The Supreme Court's decision in Watson, however, established that secular courts lack jurisdiction to decide matters that are "strictly and purely ecclesiastical."  80 U.S. at 733.  For that reason, "[i]n considering the circumstances of any given case, courts must take care to avoid 'resolving

---

³ The Diocese provided a general statement about the ecclesiastical exemption in an introduction to the specific requests in the subpoena and its responses to those requests. The general approach provides little support for the Diocese's objections to specific requests in the subpoena.

8

underlying controversies over religious doctrine.'" Our Lady of Guadalupe School v. Morrissey-Berru, 140 S. Ct. 2049, 2063, n.10 (2020) (quoting Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Mem. Presbyterian Church, 393 U.S. 440, 449 (1969)) and citing Serbian E. Orthodox Diocese v. Milivojevich, 426 U.S. 696, 715, n.8 (1976); see also In re Roman Catholic Church of Archdiocese of Santa Fe, 2021 WL 4255450, at *4 (D.N.M. Sept. 17, 2021). Further, civil courts are barred by the First Amendment's Establishment Clause from excessive entanglement in employment disputes that involve "the protected ministerial relationship." Demkovich v. St. Andrew the Apostel Parish, Calumet City, 3 F.4th 968, 981-82 (7th Cir. 2021).

In this case, however, de Laire's claim is defamation. Neither the subpoena request nor the defamation claim requires the court to decide ecclesiastical matters or employment disputes. See In re Roman Catholic Church, 2021 WL 4255450, at *5. Instead, the subpoena and the motion to compel raise a discovery issue. See Dolquist v. Heartland Presbytery, 221 F.R.D. 564, 567-68 (D. Kan. 2004) (holding that First Amendment religious rights protected by church autonomy doctrine and ministerial exception did not bar questions about church's investigation into complaints of sexual misconduct). The Diocese has not cited a case that persuasively recognizes an

9

ecclesiastical exemption from the subpoena requests at issue here.

In Scott v. Hammock, 133 F.R.D. 610 (D. Utah 1990), the plaintiff sued her father, alleging abuse during her childhood. The plaintiff served a subpoena on the office of the Presiding Bishopric of the Church of Jesus Christ of Latter-Day Saints for the production of documents about the excommunication of the defendant from the church and in particular sought communications between the defendant and persons present during a Bishop's Court. The church moved to quash the subpoena on the grounds of privilege under Utah law and the Free Exercise Clause of the First Amendment. Id. at 611.

The court considered the Utah statutory privilege that protected a confession made to a clergyman or priest and construed the privilege liberally to avoid an unconstitutional application. Id. at 618-19. In doing so, the court concluded that confidential communications within the church, between a member and a church official and from one ecclesiastical officer to another for the purpose of church discipline, are protected. Id. at 619. For that reason, the motion to quash was granted as to those confidential communications. While the Diocese cites the Scott case, it makes no effort to analogize the holding there to the circumstances presented here.

The Diocese also cites Cimijotti v. Paulsen, 340 F.2d 613 (8th Cir. 1965), a per curiam decision that briefly affirmed the district court's grant of summary judgment in favor of the defendants. The quote attributed to that case by the Diocese is actually taken from the district court's decision. Cimijotti v. Paulsen, 219 F. Supp. 621, 625 (N.D. Iowa 1963). That decision addressed the priest-penitent privilege under Iowa law. Id. at 624; see also Stevens v. Brigham Young Univ., 420 F. Supp. 3d 1114, 1118-20 (D. Idaho 2019). The Diocese has not shown that the priest-penitent privilege, as recognized in Iowa, has any bearing on the discovery issues in this case.

In Whole Woman's Health v. Smith, 896 F.3d 362 (5th Cir. 2018), also cited by the Diocese, the court criticized the lower court for failing to properly consider a privilege issue under the Religious Freedom Restoration Act ("RFRA") and the First Amendment in denying a motion to quash a subpoena. Id. at 369-72. The court acknowledged the First Amendment issues implicated by compelling discovery from a non-party religious organization and in particular compelling disclosure of internal communications. Id. at 370-73. Despite that concern, the court noted the lack of guiding cases, applied the doctrine of constitutional avoidance, and did not decide whether a privilege existed under RFRA or the First Amendment to bar the documents sought in that case. Id. at 370 & 374 ("We need not and do not

11

finally resolve whether the order enforcing discovery of the internal emails violated TCCB's constitutional rights, but the issues raised above should have given pause to the district court before it waved away TCCB's privilege claims.")  The court concluded, under Rule 45(d), that the subpoena should have been quashed to avoid an undue burden.  Id. at 374-77.

The Fifth Circuit in Women's Health did not hold that a religious institution is protected from disclosure of internal communications by an ecclesiastical privilege or the First Amendment.  There do not appear to be cases where courts have applied Women's Health as authority for an ecclesiastical privilege against discovery based on the First Amendment.[4]

The Diocese bears the burden of showing that the information or documents sought in the subpoena are protected by

---

[4] In Apple Inc. v. Match Group, Inc., 2021 WL 3727067 (N.D. Cal. Aug. 19, 2021), involving discovery in three antitrust cases against Apple Inc., the court used the Fifth Circuit's discussion of First Amendment issues to support the conclusion that the defendant, a non-religious public policy opponent of Apple, should not be compelled to turn over its internal communications. Id. at *8.  Importantly, there the target of the subpoena made a focused and developed argument that enforcement would infringe its First Amendment rights.

In McRaney v. N. Am. Mission Bd. of S. Baptist Convention, Inc., 980 F.3d 1066 (Mem.) (5th Cir. 2020), part of the panel that decided Whole Woman's Health dissented from the majority's denial of rehearing en banc and said that the decision in Whole Woman's Health was based in part on concerns about intrusions into religious bodies' self-governance.  Despite that post hoc statement, the decision itself is based on other grounds.

an applicable privilege that has not been waived.[5] XYZ Corp. v. United States (In re Keeper of the Records), 348 F.3d 16, 22 (1st Cir. 2003).  The Diocese has made no developed argument that the documents the defendants seek in Request 5 would interfere in its free exercise of religion under the First Amendment or would violate the establishment clause of the First Amendment.  Although the underlying conflict between the Saint Benedict Center and the Diocese arose out of a doctrinal dispute, the merits of the dispute are not before the court, will not be considered, and will not be decided here.  The Diocese has not carried its burden of showing that an ecclesiastical privilege or the First Amendment bars production of the information sought in Request 3.[6]

    2.   Scope of the Request

The defendants state in the memorandum in support of the motion to compel that the Diocese produced certain email communications to and from de Laire but nothing pertaining to

---

[5] Apparently, the Diocese has produced emails to and from de Laire but has not addressed how those communications are outside the claimed ecclesiastical exemption.

[6] The court notes that the defendants' argument that no blanket ecclesiastical exemption should apply because it would protect documents related to clergy sex abuse is an attempt to introduce a controversial matter that is unrelated to this case. Such gratuitous remarks do not advance the defendants' cause.

13

the Diocese's efforts to impose sanctions against the St. Benedict Center.  More specifically, the defendants assert that the Congregation for the Doctrine of the Faith issued the precepts against the St. Benedict Center, that the precepts were not issued in a vacuum, and that they want to see what de Laire submitted to the Congregation for the Doctrine of the Faith about the St. Benedict Center.  The defendants state that they are looking for documents or information that show that the sanction was an "attack" by de Laire on the Center as characterized in their publications.

Request 3, as propounded in the subpoena, is not limited to documents or information de Laire submitted to the Congregation for the Doctrine of the Faith about the St. Benedict Center, which lead to the sanction.  Instead, the defendants are seeking "[a]ll documents concerning the sanctions imposed against The St. Benedict Center."  The Diocese is not a party to this litigation, and Rule 45 precludes burdensome demands.  Request 3, as written, is overbroad for the relevance the defendants describe and therefore is unnecessarily burdensome.

D. Request 5

In Request 5, the defendants asked the Diocese to produce "[a] list of all canonical proceedings or matters in which de

14

Laire was involved, in any capacity, for the period January 1, 2011 through today." The Diocese responded:

> The Subpoena Recipients incorporate and restate all of the objections above. They state further that the request is vague, ambiguous, overly broad, and unduly burdensome and oppressive; disproportional and not tailored to the subject matter in the underlying suit; barred in whole or in part by the ecclesiastical abstention doctrine, attorney-client privilege, or attorney work product doctrine; not reasonably calculated to discover admissible evidence; and does not describe with reasonable particularity the topics for examination. The Subpoena Recipients reserve their right to produce a privilege log if and when the ecclesiastical abstention doctrine issue is resolved against the Subpoena Recipients.[7]

Doc. no. 46-2, at *4. The defendants represent, however, that the request was subsequently limited to "matters that happened after January 1, 2020 and to matters involving clergy and marriages." Doc. no. 46-7, at *6. In its objection to the motion to compel, the Diocese represents that the request was modified to include a date restriction "for the period of 6 years before the first article was printed, i.e., January 2020" but does not acknowledge a subject matter limitation. Doc. no. 59, at *5.

---

[7] It is unclear if the ecclesiastical abstention doctrine is the same privilege as the ecclesiastical exemption that the Diocese claimed with respect to Request 3. Further, the court assumes that the last sentence of the response includes a typographical error and that the Diocese intended to convey that it would produce a privilege log if the ecclesiastical abstention doctrine issue were resolved in its favor, not against it.

15

The defendants contend that the information they seek is relevant to de Laire's competence in his role as a canonist. Although not specifically cited by the defendants, they apparently are addressing several statements, attributed to de Laire's colleagues, that he was incompetent and botched cases. In the motion, they discuss certain complaints, which they say were identified on July 8, 2021, and involve dissolution of a marriage.

The Diocese again invokes an ecclesiastical exemption or ecclesiastical abstention as a privilege that bars production of the requested documents. As is discussed above, the Diocese has not shown that such a privilege exists for purposes of discovery and have not shown that the First Amendment protects against production of the documents requested here. Further, to the extent the Diocese has disclosed some documents but withheld others, any privilege may have been waived.

As with the defendants' other requests, however, there appears to be some confusion about what the defendants are seeking in Request 5. Request 5 has apparently gone through several iterations, and it may now be focused narrowly on specific information. Rather than guess at what is sought in Request 5, the better approach would be to give the defendants an opportunity to clarify the request and to focus as specifically as possible on particular information or documents.

16

The Diocese will then have the opportunity to respond appropriately in light of this decision.

### E. Other Matters

The Diocese contends that the defendants' motion should be denied because of procedural irregularities. As is noted above, the defendants improperly omitted the general objections section of the Diocese's response. In addition, the Diocese contends that the defendants failed to comply with Federal Rule of Civil Procedure 37(a)(1) because, despite the certification, the defendants did not make good faith efforts to resolve the disputes before moving to compel. The defendants argue that they complied with the requirements of Rules 45 and 37.

The court need not resolve the procedural issues here because the motion is denied for other reasons. Nevertheless, as the rules provide, counsel are expected to use their best efforts to resolve discovery matters without involving the court. Counsel do not appear to have communicated as effectively as might be necessary to accomplish that purpose.

### Conclusion

For the foregoing reasons, the defendants' motion to compel responses to a subpoena (document no. 46) is denied.

Denial of the motion is without prejudice to the defendants making further efforts to obtain relevant and appropriate documents and information from the Diocese. Before serving a second subpoena, however, counsel shall discuss these matters either in person, by telephone, or by video conference to attempt in good faith to resolve or narrow the scope of the requests and objections.

To the extent the matters are not resolved by communication or by a second subpoena, if necessary, counsel shall agree on what matters remain unresolved before a motion to compel or a motion to quash is filed. Counsel for the Diocese shall not invoke an ecclesiastical exemption or First Amendment protection unless prepared to make a detailed and particularized showing that such protection applies to a specific request made by the defendants and has not been waived.

SO ORDERED.

Joseph A DiClerico, Jr.
United States District Judge

December 9, 2021

cc: Counsel of record.