**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

|  |  |
|---|---|
| VERY REVEREND GEORGES F. de LAIRE, J.C.L., <br><br>                Plaintiff <br><br>       v. <br><br> GARY MICHAEL VORIS, ANITA CAREY, ST. MICHAEL'S MEDIA a/k/a CHURCH MILITANT, and MARC BALESTRIERI, <br><br>          Defendants. | C. A. No.: 1:21-cv-00131-JL |

<u>**FIRST AMENDED COMPLAINT**</u>

### i. <u>Introduction</u>

The Very Reverend Georges F. de Laire, J.C.L. ("Father de Laire"), a member of the clergy who has devoted his life to serving his community, brings this action for defamation to vindicate the wrongs perpetrated against him by the Defendants Gary Michael Voris ("Mr. Voris") and his media group, St. Michael's Media, including but not limited to its website, Church Militant ("Church Militant"), a reporter, Anita Carey ("Ms. Carey"), and Marc Balestrieri ("Mr. Balestrieri").

Through articles published on the website Church Militant, as well as videos produced by St. Michael's Media and published both on the Church Militant website and You Tube and other websites, Defendants have in knowing and reckless disregard of the truth embarked on a campaign of defamation against Father de Laire, intended to besmirch Father de Laire's reputation and destroy his standing in the community of his congregation in New Hampshire,

and in the Catholic Church at large, in the United States and in Rome. The articles and videos at issue were published in support of a group known as the Slaves of the Immaculate Heart of Mary, or the Saint Benedict Center, Inc. ("the Saint Benedict Center") – a group first formed in the mid-1900s after its founder was excommunicated from the Roman Catholic Church, in part, for his scathing anti-Semitic views.  Today, the New Hampshire enclave continues in the same tradition, and has, like its predecessor, similarly been prohibited from identifying as being affiliated with the Catholic Church, not only in light of its intolerant views, but also because of a doctrinal interpretation disagreement with the Vatican.

As a member of the leadership in the Diocese of Manchester for the Catholic Church in New Hampshire, for seven (7) years Father de Laire has made every effort to work with the Saint Benedict Center for the benefit of its members, and to create opportunities for them to practice their faith despite (but within the confines of) the decision made by the Vatican.  However, the leadership of the Saint Benedict Center manipulated Father de Laire's efforts, and clung to his peacemaking, as evidence that their group had the support of the Diocese, which was not the case.  As a result, the Diocese of Manchester had no choice but to issue a Decree prohibiting the Saint Benedict Center from identifying as Catholic in any manner.

In this context, Defendants, who are theologically, politically and philosophically aligned with the Saint Benedict Center, published a series of defamatory articles and videos on their website, churchmilitant.com, which were in turn published on several like-minded additional websites, defaming Father de Laire.  Not content to simply critique the actions taken by the Diocese, Mr. Voris published an article written by Mr. Balestrieri, and subsequently a video, defaming Father de Laire personally.  In an initial article, published in January of 2019, Mr. Voris published multiple knowingly and recklessly false statements written by Mr. Balestrieri

concerning Father de Laire's work performance, his fitness to serve as a member of the clergy, his ethics, and other personal matters. These statements were first published in January of 2019 with no attempt to first interview Father de Laire, with little or no investigation, and despite Defendants knowing that what they were publishing was not true.

The false and defamatory statements published by defendants included, without limitation, that Father de Laire is said – by his colleagues – to be emotionally unstable. Yet, Father de Laire's colleagues have never spoken with reporters from Church Militant. The articles also contained false statements that Father de Laire paid others to do legal work which he was employed to complete, which is categorically false. Further statements, such as those that Father de Laire has "botched" cases that he handled for the diocese and has a reputation as a "troublemaker" in the halls of the Vatican in Rome, were also made and have no basis in fact. Further, the articles knowingly published false statements made by wholly biased sources – who Mr. Voris and the Church Militant reporting staff knew to be biased – without seeking out unbiased sources in addition to the known-to-be-biased sources. Finally, the articles included defamatory innuendo, including but not limited to an implication that Father de Laire improperly utilized church funds to purchase a home. Each of these statements and innuendo are defamatory per se.

As a result of the defamatory statements, Father de Laire has suffered not only significant damage to his personal and professional reputation, he has also suffered significant emotional distress, all as Mr. Voris and the other Defendants intended him to suffer.

### ii.   **Parties**

1.       Plaintiff Father de Laire is a priest of the Catholic Church; he serves as the Judicial Vicar and the Vicar for Canonical Affairs for the Diocese of Manchester of the Catholic

Church in New Hampshire.  He is also the Pastor of a Parish.  Father de Laire resides in Manchester, New Hampshire.

2.      Defendant Gary Michael Voris is a resident of Oakland County, Michigan, and is the President of St. Michael's Media a/k/a Church Militant.  Mr. Voris also acts as a "reporter" for the website Church Militant.  At all times material hereto, Mr. Voris acted within the scope of his employment at St. Michael's Media in authoring, reviewing, and approving the publication of the articles and videos at issue here.

3.      Upon information and belief, Defendant Anita Carey is a resident of Wayne County, Michigan, and is a reporter employed by St. Michael's Media a/k/a Church Militant. Ms. Carey acted in the scope of her employment in authoring certain of the articles at issue here.

4.      Defendant St. Michael's Media is a corporation organized under the laws of Michigan with its headquarters located in Oakland County, Michigan.

5.      St. Michael's Media does business under the name "Church Militant," and posts articles, videos and podcasts on a website known as churchmilitant.com, which is accessible on the internet from anywhere in the United States of America and around the world.  Mr. Voris has reported that these posts cumulatively attract approximately 1.5 million views per month.

6.      Upon information and belief, Defendant Marc Balestrieri is currently a resident of Wisconsin.  Mr. Balestrieri is a licentiate in canon law (ecclesiastical law that developed within Roman Catholicism) and is the author of one of the articles published to the Church Militant website.  According to Defendant Voris, Mr. Balestrieri has been in touch with Mr. Voris and St. Michael's Media concerning canonical law matters for many years.  Upon further information and belief, Mr. Balestrieri was in contact with Defendants in 2021 concerning this action and is therefore aware of the pendency of this litigation and the claims brought herein.

### iii.    <u>Jurisdiction and Venue</u>

7.      The subject matter jurisdiction of this Court is properly based upon complete diversity between the parties. The amount of controversy in this matter exceeds $75,000, exclusive of costs and interest pursuant to 28 U.S.C. § 1331, § 1332. Personal jurisdiction is lawful and proper in New Hampshire where Defendants each transact business in New Hampshire generally and/or engaged in tortious conduct which caused injury in New Hampshire.

8.      The venue for this action properly lies in this district pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omission giving rise to the defamation and intentional infliction of emotional distress was based on content allegedly gathered, in part, by Mr. Voris and Ms. Carey in New Hampshire, and the damages caused by said actions took place in New Hampshire.

### iv.    <u>Factual Background</u>

<u>Father de Laire's Background and Role in the Church</u>

9.      Father de Laire was born and raised in France and immigrated to the United States in 1983.

10.     Father de Laire attended Saint Lawrence University in Canton, New York, where he obtained a Bachelor's of Art in History in 1989, and a Master's Degree in Counseling Psychology and Human Development in 1992. He attended Saint John's Seminary in Brighton, Massachusetts, where he obtained a Master's in Divinity and completed a Master's in Biblical Theology, both in 1997. Father de Laire then attended the Pontifical Gregorian University in Rome, Italy, where he earned his Juris Canonici Licentia *magna cum laude* in 2012.

11.     Father de Laire was ordained as a cleric of the Catholic Church in 1996; he has remained such for the last 24 years.  For the entirety of his service to the Catholic Church, Father de Laire has served in the Roman Catholic Diocese of Manchester.

12.     In 2013, Father de Laire was promoted to the role of Judicial Vicar and the Vicar for Canonical Affairs, positions he continues to hold today.

13.     As Judicial Vicar, Father de Laire together with the Bishop of the Diocese of Manchester forms the Tribunal (i.e., judiciary) of the Diocese of Manchester.  In that role, Father de Laire oversees the cases and trials that are brought to the Tribunal for adjudication.  Most of such cases involve challenges to the canonical validity of marriages, although the Tribunal occasionally hears other matters, including the protection of the rights of the faithful and select penal matters.

14.     As the Vicar for Canonical Affairs, Father de Laire directly assists the Bishop of Manchester in conducting the legal governance of the Diocese of Manchester in accordance with Catholic Church teachings, the 1983 Code of Canon Law, and subsequent universal and particular legislation.  In this administrative role, Father de Laire is charged with the responsibility of promoting and protecting the obligations, rights and privileges of the faithful throughout the Diocese; providing assistance and consultation on all areas of Church law for the leadership of the Diocese, the clergy and laity.

15.     In these roles, and particularly as the Vicar for Canonical Affairs, Father de Laire has been charged with the responsibility of acting as a liaison with a group known as the Slaves of the Immaculate Heart of Mary, a religious group that has incorporated itself as the Saint Benedict Center, Inc. (the "Saint Benedict Center").

16.     Consistent with his obligations as a member of the clergy, Father de Laire does not insert himself into the political issues in local, state or national politics.

17.     While Father de Laire presides over a congregation in New Hampshire, the congregation is modest in size, with an estimated 2,400 parishioners.  Father de Laire does not exert influence of any kind outside of his congregation in any public manner.

18.     Father de Laire is not a frequent commentator on news programs or in publications about local, state or national events.

19.     Father de Laire does not have a social media presence.

20.     Father de Laire is not a public figure, generally or for any particular or limited purpose.

Church Militant

21.     Church Militant is a website that claims its mission is to do "battle against sin, the devil and the demonic 'rulers of the darkness of this world, against spiritual wickedness in high places' (Ephesians 6:12)."  See https://www.churchmilitant.com/mission (last February 4, 2021). As found on the website's mission page, "We aim to convert non-Catholics to the faith founded personally by Jesus Christ, and strengthen the faith of existing Catholics. Church Militant aims to achieve this by bringing Jesus Christ to the internet through the use of digital media." Id.

22.     Mr. Voris, as the President and principal of Church Militant, is a frequent and primary contributor to the website.

23.     Church Militant had previously operated as "Real Catholic TV," but was forced to change its name when the Catholic Archdiocese of Detroit insisted that it do so, in light of the fact that it had no permission to use the Catholic name.

24.     Church Militant is known for its inflammatory publications.  In December of 2016, the New York Times profiled the website, and Mr. Voris.  In that article, it was reported that churchmilitant.com has "dismissed climate change as a hoax" and claims that Hillary Clinton (whom it refers to as "Killary") was "Satan's mop for wiping up the last remaining resistance to him in America."  See https://www.nytimes.com/2016/12/30/us/church-militant-theology-is-put-to-new-and-politicized-use.html (last viewed on February 4, 2021).

25.     The New York Times further reported that Mr. Voris "views Islam as 'entirely different' from Christianity and portrays Judaism in outdated terminology that experts in Catholic-Jewish relations consider anti-Semitic".  Id.

The Saint Benedict Center

26.     The Saint Benedict Center is a group of men and women who work and live in the rural town of Richmond, New Hampshire.  The group is religious in nature and identifies as "loyal to Father Leonard Feeney's crusade".

27.     "Father" Leonard Feeney ("Feeney") was a Massachusetts-based conservative Catholic.  Feeney was initially ordained as a Jesuit priest in 1928.  Beginning in the 1940s, however, Feeney became known for incendiary and hate-filled speeches, primarily anti-Semitic in nature.

28.     As a result of his hate-speech and contradictory Catholic views, Feeney was expelled from the Jesuit order, and ultimately excommunicated from the Catholic Church.

29.     Subsequently, Feeney, together with Catherine Clarke, formed the Slaves of the Immaculate Heart of Mary at the St. Benedict Center in Harvard Square in Cambridge, Massachusetts. While Feeney's group continued to operate in Harvard, Massachusetts for some

time, that group ultimately fractured after Feeney's death, with one segment relocating to New Hampshire.

30.     The current Saint Benedict Center in New Hampshire was founded in the mid-1980s.  The Saint Benedict Center includes a "monastery", a "convent", a school and a place for worship.

31.     The New Hampshire Saint Benedict Center champions Feeney's views of the 1940s.

32.     In 2004, the leader of the self-proclaimed religious group did not oppose being labeled an anti-Semitic, stating, "If anti-Semitism means opposing the Jews on religious matters, opposing the Zionist state in Palestine[], or opposing the Jewish tendency to undermine public morals … then we could rightly be considered such."  Later in the same year, another member of the group was quoted in the Boston Globe blaming the Jews for the murder of Christ and denying the World War II Holocaust: "There's a lot of controversy among people who study the so-called Holocaust.  There's a misperception that Hitler had a position to kill all the Jews. It's all a fraud. Six million people … it didn't occur."  See https://www.splcenter.org/fighting-hate/intelligence-report/2007/radical-traditionalist-catholic-groups-sour-life-peaceful-new-england-town (last visited February 4, 2021).

33.     As a result of its teachings, the Southern Poverty Law Center had previously designated the Saint Benedict Center in New Hampshire a "hate group".

34.     Upon information and belief, certain women who were initially curious about the faith associated with the Saint Benedict Center have since been detained by the leadership and are believed by their families to be held against their will.

https://www.unionleader.com/news/religion/nh-based-only-catholics-go-to-heaven-group-

sanctioned-by/article_ac1831fa-113f-5f55-a625-2649bd79cd5b.html (last visited February 4, 2021).

The Doctrinal Dispute

35.     Doctrinally, the Saint Benedict Center interprets a particular Catholic principle, known as "*extra ecclesiam nulla salus*" (which means, "outside the Church there is no salvation") in a manner that is incompatible with the official teachings of the Catholic Church.

36.     In 2016, the Congregation for the Doctrine of the Faith in Rome, the ultimate voice in Catholic doctrinal interpretation, declared the Saint Benedict Center's interpretation of this doctrinal principle "unacceptable."  See October 20, 2016 letter from Monsignor Giacomo Morandi to Brother Andre Marie, a true and accurate copy of which is attached hereto as **Exhibit A**.

37.     In the October 20, 2016 letter to Brother André, that same Congregation stated, "this letter officially closes the discussion on this matter."  See Exhibit A, page 2.  A copy of the letter was sent to Bishop Libasci, Bishop of the Diocese of Manchester and Father de Laire. Father de Laire saw the letter when it was received at the Diocese of Manchester.

The Diocese of Manchester's Decree

38.     Following the final decision handed down by the Catholic Church leadership in Rome in 2016 (and since affirmed), Father de Laire continued to work with the Saint Benedict Center to pastorally accommodate the members of the religious group, by granting permission for a priest in good standing (meaning not a member of the Saint Benedict Center, and against whom there were no allegations of ministerial misconduct) to offer ministry at the Center.

39.     Unfortunately, rather than seeing this as the good faith gesture that it was – allowing their faithful followers the opportunity to receive ministry and sacraments – the

leadership of the Saint Benedict Center manipulated Father de Laire's efforts to imply support and legitimacy by the Catholic Church.

40.     Therefore, on January 7, 2019, the Diocese of Manchester issued certain precepts which were consistent with the previous declarations issued by Rome.  See January 7, 2019 Decree of Precepts, a true and accurate copy of which is attached hereto as **Exhibit B** (the "Decree").  As the Vicar for Canonical Affairs, Father de Laire was the signatory to the Decree of Precepts.  Id.

41.     The Decree prohibits the Saint Benedict Center from, among other things, holding itself out as being affiliated with the Roman Catholic Church in any manner whatsoever, or purporting to hold Roman Catholic Church services on its property.  See Exhibit B, pp. 1-2.

42.     Representatives of the Saint Benedict Center challenged this Decree, and their recourse was denied in July 2020 by the Congregation for the Doctrine of the Faith. The decision affirms the validity of the Decree and upholds the precepts.

Church Militant's Defamatory Media Campaign

43.     Less than ten (10) days after the Decree was issued, Mr. Voris published the first of what would be several articles not only criticizing the Diocese's decision to issue the Decree, but defaming Father de Laire, personally.

44.     On January 17, 2019, the Church Militant website published an article authored by Mr. Balestrieri titled "NH Vicar Changes Dogma Into Heresy."  A true and accurate copy of that article is attached hereto as **Exhibit C**.

45.     Mr. Balestrieri is not listed as the author of the article, and the fact that he did write the article, which Church Militant approved and published, was obscured and hidden from Plaintiff for approximately one year during this litigation.

46.     Upon information and belief, both Mr. Voris and Mr. Balestrieri have a relationship with Brother Andre Marie, and had first-hand knowledge of the correspondence between the Saint Benedict Center and the Roman Catholic Church throughout said correspondence's history.

47.     The article conveyed a series of false and defamatory personal attacks against Father de Laire.

48.     First, Mr. Balestrieri falsely reported that Father de Laire is "said by current work colleagues to be emotionally unstable in his role as chief canonical judge of the diocese and counselor to his bishop."  See Exhibit C.  This statement is not attributed to any source, and, upon information and belief, there was no source for this fabricated statement.

49.     Father de Laire is not emotionally unstable in his role, as evidenced by his recent reappointment as both the Judicial Vicar and the Vicar for Canonical Affairs in June 2018.

50.     Mr. Balestrieri further falsely reported that "de Laire is said to be desperate to repair his image and save his chances at being promoted as bishop or an official of the Roman Curia."  See Exhibit C.

51.     Once again, Mr. Balestrieri did not provide a source for this supposed information, and, upon information and belief, Mr. Balestrieri did not have a source for this fabricated statement, but instead wrote it for publication on the Church Militant website without any evidence in support.

52.     Mr. Balestrieri went on to falsely accuse Father de Laire of conducting his duties "with incompetence in canonical matters also apparently well-known and corroborated in the Roman Curia."  See Exhibit C.

53.     As with all other of the statements in the article, Mr. Balestrieri did not cite a source for this statement, and, upon information and belief, his allegation was fabricated and not corroborated by anyone in Rome, as Father de Laire has always completed all of his work with utmost competence, once again, as evidence by his reappointment to his roles as Judicial Vicar and Vicar for Canonical Affairs.

54.     Mr. Balestrieri then continued with the fabrication that "de Laire is nicknamed in those halls [of the Roman Curia] *un incasinaro*, 'a troublemaker,' owing to his notorious botching of canonical cases involving clergy and other matters."  See Exhibit C.

55.     Once again, this statement is false and fabricated, and Mr. Balestrieri and Mr. Voris knew it to be false or recklessly disregarded its falsity.  At no time in his career has Father de Laire "botched" any case that he has worked on as Judicial Vicar, or Vicar for Canonical Affairs.

56.     In light of Father de Laire's remarkable record, Mr. Balestrieri's statement that "multiple independent sources in the Roman Curia say he has repeatedly botched diocesan cases and embarrassed his bishop before the Roman congregations of the Curia" is also false.  See Exhibit C.

57.     Mr. Balestrieri wrote, and Mr. Voris subsequently published the statement that "Church Militant has learned he is currently outsourcing work product that he as a canon lawyer is being paid well by the diocese to complete himself."  See Exhibit C.  This is a false statement, as Father de Laire has never outsourced any of his work and has always completed all of his work himself.  This statement was knowingly false when made or was made with reckless disregard of its falsity.

58.     Mr. Balestrieri went on to write that Father de Laire was "said by priests and laity who currently work with him in the diocese to be a vindictive and manipulative clericalist who pines to be named a bishop or an official of the Congregation for the Doctrine of the Faith," subsequently published by Mr. Voris.  See Exhibit C.  However, not only is the substance of the statement false, but it is further false that Mr. Balestrieri spoke with priests who currently work with Father de Laire prior to publishing the article.  Upon information and belief, other than the clearly biased members of the Saint Benedict Center and those associated with it, Mr. Balestrieri did not speak with laity working or having worked with Father de Laire within the reach of the Diocese of Manchester, New Hampshire prior to publishing the article.

59.     In fact, colleagues of Father de Laire report the opposite – that Father de Laire is not vindictive or manipulative, and he does not appear to have any aspirations to any role other than that which he currently holds.

60.     Mr. Balestrieri further reported that "at least three complaints against de Laire have been filed with the Holy See … [t]ogether they allege corruption, abuse of office, grave violations of the law, and incompetence as a canonist."  See Exhibit C.

61.     This statement was knowingly false when made or was made with reckless disregard of its falsity.

62.     In additional to publishing overtly false statements about Father de Laire, Mr. Voris also published clearly false and defamatory innuendo written by Mr. Balestrieri, stating "[a]dditional questions are raised … by his acquisitions … Church Militant has learned that de Laire now frequently resides at an estate located near Manchester that he … purchased, currently valued at $1.5 million."  See Exhibit C.  By suggesting that Father de Laire's real estate purchase

raised "additional questions," Messrs. Voris and Balestrieri clearly suggested that Father de Laire's purchase was somehow improper.  It was not.  This, too, is fabricated.

63.     Throughout the article, Mr. Balestrieri repeatedly characterized Father de Laire's issuance of the Decree as an "attack" on the Saint Benedict Center, ignoring Father de Laire's known years of work with the members of the Saint Benedict Center to find areas of agreement and solutions to the disagreements between the group, the Diocese and the Vatican.

64.     Prior to writing and publishing the January 2019 article, neither Mr. Voris nor Mr. Balestrieri made any attempt to speak with Father de Laire.

65.     Further, despite categorizing the article as "News: US News," neither Mr. Voris nor Church Militant made any efforts to investigate the purported facts or to confirm the truth of the purported facts concerning Father de Laire written by Mr. Balestrieri prior to the article's publication.  Indeed, Church Militant did no fact checking of the January 2019 article at all, taking Mr. Balestrieri's writings at "face value."

66.     Mr. Balestrieri, however, was not publicly credited with the article, which instead featured the byline "by Church Militant" even though Mr. Balestrieri was neither an employee nor agent of Church Militant.

67.     As a result of the January 2019 article, Father de Laire has suffered severe damage to his personal, professional and moral reputation.  He has received numerous phone calls and emails from parishioners, churchmilitant.com readers, and members of the public who accepted Mr. Balestrieri's reporting as true.  The emails and calls ranged from mere criticism to outright threats.

68.     Subsequently, in April of 2019, Mr. Voris published a video concerning Father de Laire and the Decree.  The video, titled "The Vortex: Attacking the Good Guys – Who are

15

Fighting Back" was posted on churchmilitant.com and other video websites, including but not limited to You Tube.  See, e.g., https://www.churchmilitant.com/video/episode/vortex-attacking-the-good-guys (last visited on February 4, 2021).  A transcript of the video is also posted at the same location.

69.    The video repeated several of the same statements included in the January article, as well as other defamatory statements, including but not limited to the following:

a.    A statement that daily mass was no longer permitted for the Saint Benedict Center members; this statement was false, as Father de Laire arranged for a priest to travel to a nearby parish to provide Latin Mass to the members of the Saint Benedict Members on a weekly basis.

b.    A report that it was Father de Laire, individually, who had been responsible for "attacks" against the Saint Benedict Center shortly after his promotion to Judicial Vicar "about two years ago."  However, Mr. Voris knew, or should have known (particularly had he conducted a reasonable investigation), that Father de Laire was simply the person responsible for communicating the decision of the Diocese.  Mr. Voris also knew, or recklessly disregarded, that Father de Laire had been a committed liaison and advocate for the members of the Saint Benedict Center for several years, working tirelessly to find a resolution to the disagreements between its leadership and the Diocese and the Vatican.  Mr. Voris also knew or recklessly disregarded that Father de Laire had been appointed Judicial Vicar (and, more to the point, Vicar for Canonical Affairs) much more than two years before the April 15, 2019 video, but rather in 2013,and again in 2018.

     c.   In addition to repeating and amplifying the prior defamatory statements, as well as making new ones, the videos posted on churchmilitant.com and elsewhere were utilized as fundraising tools, soliciting donations for the Saint Benedict Center for advocacy.

70.     On June 25, 2019, yet another article was posted on churchmilitant.com, this one authored by Church Militant reporter Anita Carey.  In this article Ms. Carey wrote not about the Saint Benedict Center, but about the Diocese's decision to demolish a church building in Laconia, New Hampshire.

71.     Ms. Carey concluded her article with a recitation of the defamatory statements that were previously written by Mr. Balestrieri and published by Mr. Voris, including the allegations that Father de Laire is incompetent, that he has had "at least three complaints" submitted against him, that he has outsourced his work, and that priests that work with him have reported him to be "manipulative and vindictive" – all of which are false and defamatory.

72.     As a result of Church Militant, Mr. Voris, Mr. Balestrieri, and Ms. Carey's defamatory statements, Father de Laire has suffered significant and irreparable damage to his personal, professional and moral reputation, as well as emotional distress, embarrassment and humiliation.

## COUNT ONE - DEFAMATION

73.     Father de Laire realleges and incorporates herein by reference each of the prior paragraphs.

74.     St. Michael's Media a/k/a Church Militant (or churchmilitant.com), Mr. Voris, Mr. Balestrieri, and Ms. Carey ("Defendants") have each published false and defamatory

statements of and concerning Father de Laire with a knowing or reckless disregard of their falsity.

75.     Defendants' false statements are defamatory.

76.     Defendants' false statements constitute libel *per se* in that they injured Father de Laire in his professional capacity as a priest and a canonical jurist.

77.     Defendants' false statements constitute defamation of a private citizen and were published negligently.  To the extent Father de Laire is determined to be a limited purpose public figure, and he should not be, Defendants published their false and defamatory statements of and concerning him with actual malice, that is, with a knowing and/or reckless disregard of their falsity.

78.     Defendants intended their false statements to be widely published and disseminated on the internet through churchmilitant.com, You Tube, and several other websites. As they intended, Defendants' statements were published and disseminated throughout the United States and likely the world.

79.     As a result of Defendants' campaign to spread malicious lies concerning Father de Laire, falsely claiming that he is incompetent in his work, that he is emotionally unstable, that he has "attacked" the Saint Benedict Center and its members, that he has "outsourced" his work, that he is ridiculed by his colleagues in Rome, and many other false statements, Father de Laire has suffered substantial damages in the form of personal, professional and moral reputational harm, emotional harm, embarrassment, humiliation, and pain and suffering in an amount to be proven at trial.

**JURY DEMAND**

**THE VERY REVEREND GEORGES F. DE LAIRE DEMANDS A TRIAL BY JURY FOR ALL CLAIMS SO TRIABLE.**

18

WHEREFORE, Father de Laire respectfully requests that this Court:

a. enter judgment in Father de Laire's favor on all Counts of the Amended Complaint;

b. award Father de Laire damages in an amount to be determined at trial, including punitive damages permitted by law;

c. award Father de Laire interest and costs on all damages assessed against Defendants; and

d. grant all such other and further relief to Father de Laire as the Court deems just and proper.

Respectfully submitted,

THE VERY REVEREND GEORGES F. de LAIRE, J.C.L.

By his attorneys,

*/s/ Joseph M. Cacace*
Howard M. Cooper (BBO # 543842) (*pro hac vice*)
hcooper@toddweld.com
Joseph Cacace (NH Bar # 266082; BBO # 672298)
jcacace@toddweld.com
TODD & WELD LLP
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626

- and -

*/s/ Suzanne M. Elovecky*
Suzanne M. Elovecky (BBO # 670047) (*pro hac vice*)
selovecky@psh.com
PARTRIDGE SNOW & HAHN LLP
30 Federal Street, 7th Floor
Boston, MA  02110
(617) 292-7900

Dated:  June 14, 2022

19