UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| VERY REVEREND GEORGES F. DE LAIRE, J.C.L., <br><br> Plaintiff, <br><br> v. <br><br> GARY MICHAEL VORIS; ANITA CAREY; ST. MICHAEL'S MEDIA a/k/a CHURCH MILITANT, and MARC BALESTRIERI, <br><br> Defendants. | Case No. 1:21-CV-00131-JL |

**GARY MICHAEL VORIS, ANITA CAREY AND ST. MICHAEL'S MEDIA'S RESPONSE TO PLAINTIFF'S EMERGENCY MOTION WITH INCORPORATED MEMORANDUM FOR LEAVE TO SUBMIT FURTHER BRIEFING AND RELATED RELIEF DUE TO THE FAILURE OF DEFAULTED DEFENDANT MARC BALESTIERI TO ATTEND HIS DEPOSITIONA ND THE CHURCH MILIANT DEFENDANT'S RULE IN THAT FAILURE**

Plaintiff's Emergency Motion fails to cite a single case, court rule or other authority that supports the various and unrelated relief sought in the motion. It seeks leave to file a motion for sanctions, without citing any rule that would permit sanctions under the circumstances or that requires leave of court. It seeks further briefing on the pending motion for summary judgment, without explaining how St. Michael's Media's ("Church Militant") supplemental production relates to any of the factual or legal issues addressed in that motion. Histrionics aside, Plaintiff is upset that Church Militant *complied* with its obligations under Rule 26(e) by supplementing its prior discovery responses when it located additional responsive documents and implies that Michael Voris's (with Church Militant, "Defendants") June 15, 2023 text message to defaulted-defendant Marc Balestrieri (which Church Militant timely produced 11 days after it was sent) was the cause for Mr. Balestrieri's failure to appear for his July 12, 2023 deposition. In a good

faith effort to keep the case on track for the September 6, 2023 trial date, Church Militant and Mr. Voris agree to limited additional discovery and some of the other relief requested in the Emergency Motion.

    **A. Mrs. Niles is willing to testify by Zoom about the Rule 26(e) supplemental production of Church Militant documents.**

As Church Militant stated at the July 14, 2023 hearing, it has no objection to producing Christine Niles[1] for a Zoom deposition limited to (a) when Church Militant located the 2018 emails to various Church Militant employees from Mr. Balestrieri's email address tommoore@churchmiliant.com; (b) the tommore@churchmiliant.com Google Drive account and (c) the prior versions of the January 2019 Article that were located there in the Google Drive account; and (d) Mr. Voris's text message.[2]  While the prior versions of the January Article are obviously relevant to this case, the 2018 emails are, at most, only marginally so and Plaintiff

---

[1] In her affidavit, Plaintiff's counsel claims to be "surprised" that Mrs. Niles did not identify herself as Church Militant's in-house counsel and claims Defendants withheld information by asserting that Mrs. Niles status as an attorney made the information privileged.  *See* Elovecky Affidavit, Dkt. 159, at ¶¶ 7 – 9.  Mrs. Niles *is* an attorney whose license to practice law in the State of Indiana is "Inactive in Good Standing."  *See* Exhibit 1.  This status does not affect the application of the attorney client privilege.  *See e.g. Parimal v. Manitext International, Inc.,* Case No. 19-CV-01910, 2021 WL 363844 at * 9 (E.D. N.Y. Feb. 3, 2021) (attorney's retired status does not destroy attorney-client privilege, applying Connecticut law); *Beyer Laser Center v. Polomsky,* Case No. 16-CV-03099, 2019 WL 5549161, *8, n. 9 (D. Colo. Oct. 25, 2019).  In any event, in citing to a portion of Mr. Voris's deposition to support her (false) contention that information was withheld on the improper assertion of privilege, Ms. Elovecky failed to attach Mr. Voris's full answer to the pending question.  *See* Elovecky Aff.  at ¶8 and at Exhibit A.  ***Mr. Voris in fact answered Ms. Elovecky's question.***  *See* Voris Dep (Second Day) at pp. 549-551, attached as Exhibit 2.  Indeed, Mr. Voris never refused to answer *any* question concerning his communications with Mrs. Niles, on the basis of attorney client privilege, even though he could have.  The issue is just one of many red herrings associated with Plaintiff's Emergency Motion.

[2] Mr. Voris asked Mrs. Niles to forward the text message to Mr. Balestrieri through a Church Militant employee who was a client of Mr. Balestrieri and had a working number for him. Plaintiff has asked to take the deposition of this employee. The employee has agreed to be deposed via Zoom, on the issue of forwarding the text message and a subsequent statement to him by Mr. Balestrieri that he would not appear for his deposition.  The employee will also confirm that he did not tell Defendants or their counsel about this conversation, until after Mr. Balestrieri told Plaintiff's counsel he would not appear for his deposition.

does not make any cogent argument otherwise.[3]  Church Militant produced the emails because they fell within Church Militant's Response to Request for Production No. 30 [*See* Exhibit 3] and because Rule 26(e) contains an obligation to supplement, a prior incomplete document production.

Moreover, although Plaintiff never asked for metadata in discovery[4] and did not serve any discovery directed at confirming Mr. Balestrieri' s authorship of the January Article, Church Militant is producing here screenshots demonstrating that Mr. Balestrieri is the owner of the Google Drive account tommoore@churchmiliant.com, made edits to the draft of the article and is the author of the January Article.  *See* Exhibit 5.  Mr. Balestrieri's authorship was pled by Plaintiff in ¶¶ 6, 44 and 45 of his First Amended Complaint, admitted by Church Militant in its Answer to the First Amended Complaint and by Mr. Balestrieri through his default.  His authorship of the January Article therefore is not really in dispute.[5]  The suggestion that these documents warrant a wholesale reopening of discovery is ridiculous.  The questioning of Mrs. Niles, therefore, should be limited to the supplemental production.[6]  Further, Church Militant

---

[3] The emails do confirm that Mr. Balestrieri is tommoore@churchmilitant.com, however, and confirm what Defendants have said for over 18 months now:  Mr. Balestrieri is the author of the January Article.  *See e.g*. CM 1390, attached as Exhibit 4.

[4] While a party may request metadata in discovery, metadata it is not included in the definition of "document or electronically stored information" contained in Rule 34(a)(1)(A).  *McSparren v. Commonwealth of Pennsylvania,* Case No. 13-CV-1932, 2016 WL 687992 at * 4, n. 2 (M.D. Pa. Feb. 18, 2016), collecting cases.  ***Plaintiff never asked for it.***

[5] If Plaintiff is allowed to again amend his pleading to withdraw the statement that Mr. Balestrieri is the author of the January Article so that the issue will be tried, Defendants' counsel will be a witness, based on conversations she has had with Mr. Balestrieri over his authorship of the January Article.  Local Rule 45.5 allows for this testimony, with the permission of the Court.

[6] Ms. Elovecky attempts to impeach Mrs. Niles's affidavit by testifying that Defendants represented there were no drafts of the January Article because the "article had been uploaded directly onto a platform and any changes were made directly in that platform."  *See* Elovecky Aff. at ¶14, Dkt. 159.  She fails, however, to identify how this is different than what Mrs. Niles states in her affidavit; Mrs. Niles affidavit describes a process where the drafts are emailed, uploaded into the publishing platform and copy edited in the platform.  *See e.g.* Niles Aff. at ¶¶7

agrees to pay the cost of the court reporter for this deposition, as a gesture of good faith and in order to avoid more briefing on issues that distract from the merits and the parties' trial preparation.

**B. Mr. Voris is willing to be deposed about his June 15 text.**

Mr. Voris first learned that Mr. Balestrieri denied authoring the January Article when Br. Andre testified in his deposition about a conversation he had with Mr. Balestrieri in which Mr. Balestrieri denied authorship.[7] Given the long professional relationship between Mr. Voris and Mr. Balestrieri and the significant trust Mr. Voris placed in him (including allowing him to author articles for Church Militant), Mr. Voris was naturally upset when it *appeared* that Mr. Balestrieri was going to inform the Court that he did not author the January Article. No one knows how Mr. Balestrieri would testify or what Mr. Balestrieri meant when he emailed the Court:

> *I most respectfully communicate to the Court that I wish to 'have my day in Court' to defend myself against the false assertions of fact and claims that have been asserted by more than one party regarding me. Consequently, for the sake of the truth, I am opposed to the granting of the Motion for Summary Judgment.*

*See* Emergency Motion at Exhibit B.

However, counsel for both sides – and Mr. Voris - inferred Mr. Balestrieri was going to repeat what he told Br. Andre. Nonetheless, Defendants never opposed Mr. Balestrieri testifying or sitting for his deposition. Rather, Defendants asked that Mr. Balestrieri's statements be placed

---

- 9, Dkt. 158. Ms. Elovecky appears to not understand that Google Drive and Google Docs are not the "publication platform" Church Militant uses and are not the typical means through which freelance authors submit articles. *See* Elovecky Aff. at ¶17; Niles Aff at ¶7. Mr. Voris sat for two full days of deposition and Defendants have responded to serial discovery requests served over several years. Not once were they asked for any information about the publishing platform.
[7]Br. Andre's deposition took place on March 7, 2023. Plaintiff did not seek leave to take discovery on the authorship of the article after this date, although he knew as of that date that Mr. Balestrieri (apparently) denied being the author.

on the record in open court, to present any later dissembling by Mr. Balestrieri. *See* Transcript of June 15, 2023 (12:15 p.m.) hearing, attached as Exhibit 6, at p. 2. Defendants never interfered in anyway with the process and, other than the June 15, 2023 text, never communicated with Mr. Balestrieri about his deposition, without the prior consent of Plaintiff's counsel. Plaintiff's counsel, not Defendants, even suggested that Mr. Balestrieri be "threatened" with the perils of not appearing for his deposition on July 12, 2023 and encouraged counsel for Defendants to "float the specter of seeking sanctions if he doesn't show." *See* July 11, 2023 email, attached as Exhibit 7. The Church Militant Defendants incurred significant costs – much of which have not been refunded – in making arrangements to travel to Boston for the deposition and spent significant time preparing for the deposition. Plaintiff therefore is not the only party who is out fees and costs as a result of Mr. Balestrieri's decision not to appear for his deposition.

Further, Mr. Balestrieri's voicemail messages do not contain any suggestion that he was not appearing for his deposition because of the text message. Mr. Balestrieri's performance at the June 15, 2023 hearing demonstrates that he is not shy about informing the Court when he believes he was threatened by a party to this case. *See* June 15, 2023 Transcript at p. 16. Indeed, after Mr. Balestrieri refused to provide the Court with his address, even on a confidential basis, he retrieved his cell phone from the courthouse marshals, in order to find dates on which he may be available for his deposition. This was ***after*** Mr. Voris sent his text. Mr. Balestrieri did not seek the assistance of the Court or anyone else in connection with the text. Rather, he proceeded to sign an agreement (at ***Defendants***' insistence) to appear for his deposition on July 12, 2023. *See* Written Agreement, Dkt. 148-1. There is simply no evidence Mr. Balestrieri's decision not to sit for his deposition is related in any way to any actions of Defendants. The text no more

interfered with Mr. Balestrieri's appearing for his deposition than did Plaintiff's failed efforts at serving him.

Nonetheless, Mr. Voris agrees to sit for his Zoom deposition on the limited issue of the text message, the circumstances around him sending it and any other communications with Mr. Balestrieri about his deposition (there are none). Mr. Voris has already sat for two full days of deposition, **both** of which occurred after Plaintiff was informed that Mr. Balestrieri was the author of the January Article. Nonetheless, in gesture of good faith, Church Militant agrees to pay the court reporter cost for the Zoom deposition.

### C. Supplemental briefs on summary judgment and other relief requested.

Plaintiff does not explain which of the issues raised in Defendants' motion for summary judgment have been impacted by the 2018 emails, the text message or the prior versions of the January Article, so Defendants are not in a position to agree or disagree with the request for additional briefing. If the Court is inclined to allow the parties to supplement their briefs based on the supplemental production, Defendants will submit the 2018 emails as additional evidence supporting the reasonableness of their reliance on Mr. Balestrieri as a source for the January Article and the lack of any "red flags."

Plaintiff further asks for an order "requiring further and complete production of all documents requested." Defendants knew that one of Mr. Balestrieri's many, many pseudonyms was Tom Moore, but this does not mean that they recalled Mr. Balestrieri using Tom Moore in an email address when they made their initial production and confirmed in February 2022 that they did not locate any drafts of the January Article. Mr. Balestrieri did not use any of his other pseudonyms in an email address. Defendants are willing to make a representation to the Court and Plaintiff that they have made a good faith, thorough search for all records that were not

subject to an objection and that they have produced all such records. That can be done through the agreed-to depositions.

Finally, Defendants agree that the Court should issue an order holding Mr. Balestrieri in contempt for cancelling the deposition. Defendants want to secure Mr. Balestrieri's testimony, because his truthful testimony will help their case, and, as they have done throughout this process, Defendants support all efforts at securing that testimony.

**D. Conclusion.**

Defendants certainly regret failing to recall at the time they responded to Plaintiff's request for documents, that Mr. Balestrieri used the email address tommoore@churchmiliant.com for a short period of time. But Rule 26(e) contemplates that parties will, in the course of a years-long lawsuit like the instant one, stumble upon documents that were asked for in earlier discovery requests. The rule would not exist if this were not the case and the rule provides for sanctions when a party *fails* to supplement its prior discovery responses, not when it does so. Defendants complied with their obligations under this rule, as they have repeatedly throughout this case, as old information was discovered and new information came to light. They should not be faulted for doing so. Further, Mr. Balestrieri's decision not to appear is par for the course of his conduct in this case, as demonstrated by Mr. Balestrieri's on-the-record performance on June 15, 2023 and the affidavits of Plaintiff's process

servers. The agreed-to discovery will resolve this issue and keep the case on tract for a September 6, 2023 trial.

| MADDIN, HAUSER, ROTH & HELLER, P.C. | NICHOLSON LAW FIRM, PLLC |
|---|---|
| */s/ Kathleen H. Klaus* | */s/ Neil B. Nicholson* |
| Kathleen H. Klaus (MI Bar #67207) | Neil B. Nicholson (NH Bar #18341) |
| *Pro Hac Vice* | Attorney for Michigan Defendants |
| Attorney for Michigan Defendants | 58 North State Street |
| 28400 Northwestern Hwy, 2nd Floor | P.O. Box 4137 |
| Southfield, MI 48034 | Concord, NH 03302 |
| (248) 359-7520 | (603) 856-8441 |
| kklaus@maddinhauser.com | neil@nicholson-lawfirm.com |

Dated: July 19, 2023

03837803 v1

8