# EXHIBIT 6

1              UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF NEW HAMPSHIRE
2
   * * * * * * * * * * * * * * * * *
3                                  *
   VERY REVEREND GEORGES F.        *
4  DE LAIRE, J.C.L.,               *
                                   *  No. 1:21-cv-131-JL
5                  Plaintiff.      *  June 15, 2023
                                   *  12:15 p.m.
6                                  *
            v.                     *
7                                  *
                                   *
8  GARY MICHAEL VORIS, ET AL,      *
                                   *
9                  Defendants.     *
                                   *
10 * * * * * * * * * * * * * * * * *

11         TRANSCRIPT OF EXCERPT FROM MOTIONS HEARING
           INQUIRY BY THE COURT OF MARC BALESTRIERI
12          BEFORE THE HONORABLE JOSEPH N. LAPLANTE

13
   APPEARANCES:
14

15 For the Plaintiff:      Suzanne Elovecky, Esq.
                          Partridge Snow & Hahn
16
                          Joseph M. Cacace, Esq.
17                        Todd & Weld LLP

18
   For the Defendants:    Kathleen H. Klaus, Esq.
19                        Maddin Hauser Roth & Heller, PC

20                        Neil B. Nicholson, Esq.
                          Nicholson Law Firm, PLLC
21
                          Marc Balestrieri, pro se
22

23 Court Reporter:        Brenda K. Hancock, RMR, CRR
                          Official Court Reporter
24                        United States District Court
                          55 Pleasant Street
25                        Concord, NH 03301
                          (603) 225-1454

1

2                          <u>EXCERPT</u>

3              THE COURT:  Understood.  Well, then, let's talk about

4     it.

5              Mr. Balestrieri, you're here.

6              MR. BALESTRIERI:  Yes, sir.

7              THE COURT:  All right.  So, I mean, I guess what I

8     need to know is have you folks spoken to the witness about when

9     he's available?  No.  Do you want some time to do that, have a

10    conversation?

11             MS. KLAUS:  I would like to have it on the record,

12    just given the history with this witness.

13             MS. ELOVECKY:  I agree, your Honor.

14             THE COURT:  Go ahead.  Okay.  Are you available for

15    this deposition?

16             MR. BALESTRIERI:  Just in general as a question --

17             THE COURT:  Yes.

18             MR. BALESTRIERI:  -- or today, for instance?

19             THE COURT:  Just in general.  I don't think today is

20    optimal.

21             MR. BALESTRIERI:  I think, your Honor, that I was just

22    served this document without any prior indication that I would

23    be served today.  I do not --

24             THE COURT:  That's generally how service happens,

25    yeah.

1          MR. BALESTRIERI:  Forgive me.  It's my first time

2     being served.

3          THE COURT:  Not a problem.

4          MR. BALESTRIERI:  Secondly, I have not had a chance to

5     speak with any counsel regarding the opportunity of accepting

6     this invitation to be deposed.

7          THE COURT:  It's not an invitation.  It's a Court

8     Order.

9          MR. BALESTRIERI:  Court Order.

10          THE COURT:  Yeah.  I don't mean to quibble, but

11     counsel have reported that you've been pretty unavailable, and

12     you did default in this case, and not hiring a lawyer is not --

13     I got an email from you, and you need to understand not being

14     able to hire a lawyer is not grounds for default.  But, of

15     course, the Court wants to work with you and have you

16     participate in an appropriate way.  The question is, these

17     folks want to take your deposition as a witness, okay?

18          MR. BALESTRIERI:  Yes.

19          THE COURT:  And they're entitled to do that, and they

20     want it to happen today, if necessary, because they're a little

21     concerned that, if they put it off to a different day, you

22     might not appear.  So, I guess what I want to know is are you

23     willing to have a conversation with them?  We can do it on the

24     record now.  I don't want to make you do it on the record.  Are

25     you willing to have a conversation with them, though, about an

1    appropriate time that you're available to be questioned?

2            MR. BALESTRIERI:  Your Honor, in response to your good

3    questions, which are quite fair, as your Honor may recall, I

4    communicated an intention on my part, and this is why I'm also

5    here, to file a motion to vacate the judgment against me and a

6    motion to dismiss.  It is my understanding that I have to

7    participate.

8            THE COURT:  It's your understanding what?

9            MR. BALESTRIERI:  I have to participate in order to

10   achieve those two motions, and so if it means my deposition

11   being taken, I would just rather have time to speak with

12   counsel about this prior to stipulating my absolute agreement

13   to being deposed.

14           THE COURT:  Who is your counsel?

15           MR. BALESTRIERI:  As I indicated, I don't have counsel

16   right now.

17           THE COURT:  Okay.

18           MR. BALESTRIERI:  And, as Ms. Otis has received

19   communications from me, I have attempted to find counsel, and

20   it's been quite difficult.

21           THE COURT:  To what do you attribute your difficulty

22   in retaining counsel?

23           MR. BALESTRIERI:  I think part of the fact that there

24   was a default judgment entered against me, prior time.

25           THE COURT:  Well, sometimes there are grounds to

1    vacate a default, you know.  If you have a good reason, there's

2    grounds to vacate a default frequently.  And, by the way, it

3    might be a situation -- I can't speak for counsel here, and I

4    wouldn't presume to, but a lot of times in a default situation

5    counsel are very open to vacating the default, because it might

6    be their view that the case would be better litigated with you

7    as a party than not.  Defaults are not something anybody really

8    wants.

9            MR. BALESTRIERI:  I think that is my intention, your

10   Honor, is to get the judgment vacated.

11           THE COURT:  But it doesn't mean it will happen.  A, I

12   can't give you advice.  I'm not your lawyer.

13           MR. BALESTRIERI:  Of course.

14           THE COURT:  And, B, these folks have their positions

15   that they're going to want to assert, and I have to listen to

16   them and consider them.  I'm just trying to tell you that it's

17   not that unusual, and it might be a set of circumstances where

18   one or both of the parties here or all of the parties would

19   prefer to have you in the case, so we'll have to figure that

20   out.

21           Okay.  Did you fly in today?

22           MR. BALESTRIERI:  I did, sir, yes.

23           THE COURT:  How long do you plan to be in the state?

24           MR. BALESTRIERI:  Just a few hours I have before

25   family -- my father was just hospitalized.

1          THE COURT:  You have family here?

2          MR. BALESTRIERI:  I do, within a hundred miles of this

3     location, yeah.  I do not reside within a hundred miles of this

4     location.

5          THE COURT:  Give me the reference to a hundred miles

6     again.

7          MR. BALESTRIERI:  Federal Rule of Civil Procedure 45.

8          THE COURT:  Yeah, but what's not within a hundred

9     miles?

10          MR. BALESTRIERI:  Well, it must be served within a

11     hundred miles of my residence.  That's why I mention a hundred

12     miles.  That's not the case.

13          THE COURT:  Well, you've been served at the

14     courthouse.

15          MR. BALESTRIERI:  Yes.

16          THE COURT:  Yeah.

17          MR. BALESTRIERI:  So, I flew in from out of state

18     quite a distance to get here.

19          THE COURT:  Right.  I'm just trying to understand

20     what's going on.

21          MR. BALESTRIERI:  I was here to communicate to your

22     Honor my intention to file those two motions and to participate

23     in the degree needed from me, and I cannot say at this time,

24     without having to confer with counsel beforehand, any

25     conditions pertaining to my agreeing to be deposed or not.  I

1  also am not prepared to be deposed nor to produce any documents

2  which are requested.

3          THE COURT:  I think the lawyers understand that part.

4  I honestly can tell you that I doubt it's their preference to

5  depose you today.  They would much prefer for you to be

6  prepared and for them to prepare.  It would be a much better

7  proceeding if that was the case.

8          MR. BALESTRIERI:  Sure.

9          THE COURT:  But I can also pretty much assure you

10  that, if their choice is to not depose you at all or depose you

11  unprepared, them and you, their preference would be that you

12  were deposed, because what they don't want to do is have to

13  chase you, okay?

14          MR. BALESTRIERI:  Sure.

15          THE COURT:  Now, I'm a little bit -- and your

16  references to a hundred miles.

17          MR. BALESTRIERI:  No.  I was just reading the rules

18  that were attached to the subpoena that was just served on me.

19  A mention was made to -- a subpoena may command a person to

20  attend --

21          THE COURT:  Whoa, whoa, whoa.  Stop.

22          MR. BALESTRIERI:  -- only as follows --

23          THE COURT:  Excuse me.  We can't both talk at the same

24  time.

25          MR. BALESTRIERI:  Yes, your Honor.

1           THE COURT:  She's got to type everything, and when you

2    read that fast she's not going to get it anyway.

3           MR. BALESTRIERI:  Sure.

4           THE COURT:  My point is that your reference to a

5    hundred miles are raising concerns with me that you are seeking

6    to evade that subpoena or not respond to it, and, if that's the

7    case, that's a concern, okay?  Anyway, you're here to visit

8    sick family.

9           MR. BALESTRIERI:  No.

10          THE COURT:  Oh.

11          MR. BALESTRIERI:  The family is not here.  I have a

12   situation where my father was just hospitalized today.

13          THE COURT:  Not here?

14          MR. BALESTRIERI:  Yes, sir.

15          THE COURT:  Oh, I'm sorry.

16          MR. BALESTRIERI:  I came here for this hearing.

17          THE COURT:  I misunderstood.  Okay.  And you plan to

18   leave today?

19          MR. BALESTRIERI:  I have to, but I am not opposed to

20   participating if I do not receive adverse counsel for my

21   eventual counsel.

22          THE COURT:  Say that again.

23          MR. BALESTRIERI:  I'm not opposed to being deposed,

24   but I want to speak with counsel beforehand.

25          THE COURT:  Yeah, that's fair.

1          MR. BALESTRIERI:  Otherwise I'm unprepared.

2          THE COURT:  All right.  Are you willing to share with

3     counsel here your contact information so they can be in touch

4     with you after you leave this District today?

5          MR. BALESTRIERI:  Yes, your Honor.

6          THE COURT:  All right.

7          MR. BALESTRIERI:  I already provided my information

8     to, I believe, the Court Clerk.

9          THE COURT:  Go ahead.  Do you want to say something?

10          MS. ELOVECKY:  I was actually going to ask for that

11     contact information, and we would -- I'm sorry, but I would

12     like to ask for it under oath on the record.

13          MS. KLAUS:  I concur.

14          MS. ELOVECKY:  It's not a normal request, but this

15     isn't a normal situation, and so I would like to have that

16     under oath on the record.

17          THE COURT:  All right.  Mr. Balestrieri --

18          MR. BALESTRIERI:  Yes, your Honor.

19          THE COURT:  -- are you willing to provide your address

20     to the Court, your contact information, under oath on the

21     record?

22          MR. BALESTRIERI:  Yes, your Honor.

23          THE COURT:  All right.  Raise your right hand.

24          (Marc Balestrieri was duly sworn by the Court)

25          MR. BALESTRIERI:  Yes, your Honor.

1          THE COURT:  Thank you.  Your name, sir.

2          MR. BALESTRIERI:  Marc Balestrieri.

3          THE COURT:  And why don't you spell your last name for

4     the record.

5          MR. BALESTRIERI:  It's B for bravo, A for alpha, L for

6     lima, E for echo, S for sierra, T for tango, R for Romeo,

7     i-e-r-i.

8          THE COURT:  Thank you.  And your residential address.

9          MR. BALESTRIERI:  514 Americas Way, PMB 20863.

10         THE COURT REPORTER:  Sorry.  What was that?

11         THE COURT:  PMB 20863?

12         MR. BALESTRIERI:  Correct.

13         THE COURT:  What's the "PMB"?

14         MR. BALESTRIERI:  I believe that's Private Mailbox,

15    South Dakota.  Pardon me.  Box Elder is the name of the city,

16    B-o-x, space, E-l-d-e-r, South Dakota 57719.

17         THE COURT:  Thank you.

18         MR. BALESTRIERI:  It's the exact address listed on the

19    website of the entity that I manage.

20         THE COURT:  What is the name of the entity?

21         MR. BALESTRIERI:  Canonical Aid, canonicalaid.org.

22         THE COURT:  canonicalaid.org?

23         MR. BALESTRIERI:  Correct.

24         THE COURT:  And that address is on the website?

25         MR. BALESTRIERI:  It's on the website, and it's on the

1   business card, your Honor.

2           THE COURT:  All right.  So, is that your residential

3   address?

4           MR. BALESTRIERI:  In as much as I am a nomadic

5   resident, that's permitted according to the laws of the State

6   of South Dakota.  So, the answer is yes.

7           THE COURT:  All right.  Where do you live, sir?

8           MR. BALESTRIERI:  I do not live within (ph) a private

9   mailbox.

10          THE COURT:  I see.

11          MR. BALESTRIERI:  So, I am providing the address which

12  qualifies as a legal residence, but at the same time, because

13  the plaintiff has sent an individual --

14          THE COURT:  To serve you.

15          MR. BALESTRIERI:  -- after me.

16          THE COURT:  Well, to serve you, right?

17          MR. BALESTRIERI:  After me, okay, in a hostile manner,

18  leading to a reasonable concern for grave risk to my life.  I

19  have a founded reason not to provide the actual location of

20  where I reside.

21          THE COURT:  So, you want to participate in this

22  litigation, but you don't want to tell me where you live?  Is

23  that your testimony right now?

24          MR. BALESTRIERI:  For founded reasons, your Honor,

25  yes.  I have provided the contact address that I have sworn to,

1      and I agree to abide by being contacted at that address.

2             THE COURT:  Say that again.

3             MR. BALESTRIERI:  So, I have provided an address where

4      I can be contacted by the other defendants as well as by the

5      plaintiff's counsel.

6             THE COURT:  All right.  Okay.  You've given us the

7      address of an entity, all right, which may or may not be

8      sufficient to serve you process.  The Court needs to

9      communicate with you, if you want to participate.  You've sent

10     a letter to the Court today saying you want to --

11            MR. BALESTRIERI:  I only received one communication

12     from the Court, and that was a notice of Entry of Default

13     judgment, nothing prior to that.

14            THE COURT:  Let me ask you this question.  Now I'm

15     acting selfishly, not to even facilitate counsels' litigation.

16     Are you willing to provide your address not confidentially but

17     not on the record under oath to my Deputy Clerk here so we can

18     contact you, if we need to?

19            MR. BALESTRIERI:  Your Honor, I testified under oath

20     that I will respond to each and every communication that comes

21     from the Court if it is sent to the address that I've just

22     provided under oath.

23            THE COURT:  All right.  You have to understand what

24     you're saying today makes it more likely that I order you to

25     submit to a deposition today under the subpoena, because it

1   doesn't sound like you're going to make yourself available; it

2   sounds like you're reserving the right to not make yourself

3   available.  And I don't mean to read too much into what you're

4   saying.  I'm trying to approach this in good faith.

5        But let me ask this question:  Mr. Balestrieri has

6   said you sent someone after him with hostility in a way that

7   endangered him.  Do you care to comment on that?

8        MS. ELOVECKY:  Yes, your Honor.  On behalf of Father

9   de Laire, we engaged two process servers to go to a conference,

10   I think it was in Wisconsin, that we believed that Mr.

11   Balestrieri would be attending.  One of those process servers

12   attempted to serve him within a chapel, and Mr. Balestrieri

13   left that building before that process server was able to make

14   contact with him.

15        Another process server attempted to make contact with

16   him outside, and the process server reported to me, and I

17   believe all of this is attached to our motion --

18        THE COURT:  Slow down.

19        MS. ELOVECKY:  It's a habit.  It's a family trait,

20   your Honor.

21        THE COURT:  It's okay.  Mine, too.

22        MR. ELOVECKY:  I'm trying to pick up where I left off.

23        The second process server identified themselves, and

24   what I was saying was -- this is all included in our Motion for

25   Alternative Service.  The second process server approached Mr.

1   Balestrieri outside of that chapel, informed him that he was

2   looking to serve him in a civil action, and what was reported

3   to me was that Mr. Balestrieri then ran into the woods and had

4   a friend pick him up or an acquaintance pick him up in a

5   vehicle, which then drove erratically off road.  And I am not

6   aware of any hostility or aggressive maneuvers from our process

7   server, but I am aware of Mr. Balestrieri's response to an

8   attempt to be served in an appropriate way.  This was after we

9   made attempts to serve him in other manners, both with a

10  subpoena before he was a party and to serve him at his

11  addresses that we had obtained through his website and other

12  information.  This was not our first attempt to serve him.

13          THE COURT:  Have there been informal attempts just to

14  communicate with him and contact him?

15          MS. ELOVECKY:  I have called Mr. Balestrieri; I've

16  left messages with his answering service.  I also have emailed

17  him to at least two or three email addresses that we have.  One

18  of those emails since this process started has since become

19  undeliverable; the other has remained active.  If he's claiming

20  that he did receive the copy of the default judgment, that was

21  sent in all of the same ways that prior attempts at service

22  were sent as well, and all of that, I believe, is documented in

23  our Motion for Alternative Service.

24          THE COURT:  All right.

25          MR. BALESTRIERI:  Your Honor, may I respond to what

1    Ms. Elovecky just said?

2            THE COURT:  In a moment, yes.

3            Defense counsel, have you been communicating with

4    Mr. Balestrieri?

5            MS. KLAUS:  Not this year.  We did, obviously, before

6    we disclosed those communications on a privilege log but not

7    since we were last before the Court.

8            THE COURT:  And you don't represent him?

9            MS. KLAUS:  No, I do not.

10           THE COURT:  Go ahead, sir.

11           MR. BALESTRIERI:  Thank you, your Honor.  Your Honor,

12   the person who was chasing after me but also after my friend,

13   who did extract me from the situation -- I say "extract" in the

14   full sense of the term -- is named Josh Erickson.  He's a

15   private investigator with a former military background,

16   residing in Minnesota, and what I can say is that, when you

17   have an individual cross you in a staircase and continue but

18   not mention to you anything about being a process server, and

19   then suddenly you leave a building, go down a walkway, which

20   was at the Shrine of Our Lady of Guadalupe, and you have -- you

21   note someone behind you, and this person is stomping after you

22   at a distance, and you look back and forth and go down your

23   merry way, and then you sense that person is there, and you

24   look back again, and this person is now increasing pace but is

25   not flagging you down, is not yelling anything, and then you

1    start running because you feel that this is completely off.

2          Erickson had the opportunity to inform me when he

3    crossed me in the building that he was a process server.  He

4    did not.

5          And then I saw an individual chase after me, requiring

6    me to contact a friend, who fortunately was in the area, with a

7    bit of experience and extract me, and then you have Erickson

8    speeding erratically, breaking the law, trying to block the

9    exit from the property.  We're talking about a car positioning

10   itself blocking free passage on the roadway and then chasing

11   after you at high speed.  That's not in the affidavit that I

12   found online filed by defense counsel or posted online through

13   PACER.

14         That is just the tip of the iceberg for the reasons

15   why I have reasonable grounds to object to providing my actual

16   address, but at the same time, your Honor, committing again

17   under oath to responding to any communication that is issued by

18   you or the Court Clerk to the address that I provided to you

19   for the record.  But it is not without grave reason for fear of

20   injury or other that I respectfully decline to provide my

21   actual address of residence.  And I already have communicated

22   these concerns to the District Attorney's Office for the

23   jurisdiction of La Crosse.

24         THE COURT:  When was that?

25         MR. BALESTRIERI:  Back in August of 2022.

1           THE COURT:  You reported that in August?

2           MR. BALESTRIERI:  Yes, sir.

3           THE COURT:  What action have they taken?

4           MR. BALESTRIERI:  I am not aware.  I have not received

5    any communication from that District Attorney's Office.

6           THE COURT:  All right.

7           MR. BALESTRIERI:  I'm not stating that I'm opposed to

8    participating in a deposition.

9           THE COURT:  You're just not stating that you will

10   appear for the deposition.

11          MR. BALESTRIERI:  I'm not saying that I need -- I came

12   wanting to speak with counsel beforehand.

13          THE COURT:  Sure.

14          MR. BALESTRIERI:  And I'm here also in a large degree

15   for the sake of the truth, your Honor.  Much of what has been

16   written in these filings is false.

17          THE COURT:  See, this part you don't get to do,

18   because you defaulted.  It doesn't mean you'll never get a

19   chance to do it, but, being heard as a party, that requires

20   being a party.

21          MR. BALESTRIERI:  Yes, sir.

22          THE COURT:  And there was a default.  I mean, you were

23   served, and you didn't appear.

24          MR. BALESTRIERI:  Well --

25          THE COURT:  Maybe there's reason for that, but people

1   appear without counsel all the time and explain to me they need

2   time to get a lawyer.  It happens all the time.  It sounds like

3   from your email today that that was the reason you didn't

4   appear; you thought you needed counsel, and you haven't been

5   able to get counsel.

6          MR. BALESTRIERI:  There are other reasons, which I

7   won't -- which I can't get into right now.

8          THE COURT:  Yeah.  Well, okay.

9          MR. BALESTRIERI:  But if you want me to commit to

10  participating in a deposition at a mutually amenable date and

11  time in the future, I don't think I can obtain being heard for

12  a motion to vacate the default judgment and a motion to dismiss

13  without agreeing to participate --

14         THE COURT:  Not the case at all.  Your motion -- if

15  you file a motion to vacate the default it will be evaluated on

16  the merits, not based on whether you cooperated with a

17  deposition.

18         MR. BALESTRIERI:  Understood.

19         THE COURT:  This is not transactional.

20         MR. BALESTRIERI:  Of course.

21         THE COURT:  Okay.  What I'm trying to do is enforce

22  the parties' and counsels' efforts to conduct discovery in this

23  case, no more, no less.  Right now you're not a party, you're a

24  witness, and you don't need to bargain with me at all.

25         MR. BALESTRIERI:  That was not my intention.

1    THE COURT:  Yeah.  But if you seek a vacating of that

2    default, it will be evaluated on its merits, not on whether --

3    any impression you made today or anything you're willing to do

4    today.  You can be assured of that.

5    MR. BALESTRIERI:  That was not my intention.

6    THE COURT:  Okay.  What I'm dealing with, though, what

7    I'm dealing with is a request to take your deposition today,

8    okay, which is nobody's preference, but nothing I've heard

9    today assures me that I should not order that, because it seems

10   as if you might be -- your preference might be not to be

11   deposed in this case.  You want to consult with counsel about

12   it, which is perfectly reasonable, but you've had no luck

13   obtaining counsel, and witnesses for a deposition don't usually

14   need counsel, but you were a party in the case, so I totally

15   understand why you want counsel.  It's very reasonable.

16   I don't want to put you in a position, frankly, that

17   will prejudice you in some way because you haven't had time to

18   consult with counsel.

19   MR. BALESTRIERI:  Your Honor, look, I did say that I

20   was also here for the sake of the truth, and so if you want me

21   to commit and say that I will participate in a deposition at a

22   future point in time, the answer is yes.

23   THE COURT:  I don't want you to do anything.  I don't

24   want to be in a position where you are doing things and making

25   decisions about how to conduct your affairs with a motive to in

1    some way please the Court.

2                MR. BALESTRIERI:  No, that's not the case, your Honor.

3                THE COURT:  You say that today, I know, but it's

4    important, because that shouldn't be how you make decisions.

5    You should make decisions in your own interests.

6                MR. BALESTRIERI:  But also the Court's interest,

7    because, if I am deposed today I would have to say, "I do not

8    recall," because I would not recall.  I would not have the

9    documentation in front of me; I would not have my notes; I

10   would not have had time to prepare my recollections.

11               THE COURT:  Let me ask you this question before I

12   adjourn this:  Do you have a reasonable likelihood of being

13   able to retain counsel to consult with you on this deposition?

14               MR. BALESTRIERI:  I believe with more time, yes.

15               THE COURT:  Okay.  Here's what I'm going to do:

16   Counsel have asked me to do this on the record.  I think I've

17   got the information that you asked me to get on the record, but

18   I don't see us making much more progress on this, and I don't

19   want to waste anybody's time.

20               I'm going to adjourn.  I'm going to ask counsel to do

21   their best, as professionals, officers of the court, to discuss

22   scheduling a deposition with the witness, and do your best to

23   do that; obtain what assurances you can to make you comfortable

24   proceeding.  Obviously, you don't want to proceed today, but

25   you feel like you may have to.  And I'll be here in the

1   courthouse should you need me to be involved in this any

2   further, but right now I'm going to try to ask you, as

3   professionals, to try to work this out with Mr. Balestrieri.

4   All right?

5         MS. KLAUS:  Thank you, your Honor.

6         MR. CACACE:  Your Honor --

7         THE COURT:  Yes, sir.

8         MR. CACACE:  -- can I just ask, I do have to leave for

9   another obligation, so if Ms. Elovecky needs you is that -- may

10  I be excused as New Hampshire counsel?

11        THE COURT:  You may.  Ms. Elovecky is -- the Court's

12  perfectly comfortable with her.

13        MR. CACACE:  Thank you.

14        THE COURT:  Okay.  We are adjourned.

15        MS. ELOVECKY:  Thank you, your Honor.

16        THE CLERK:  All rise.

17     (WHEREUPON, the proceedings adjourned at 12:37 p.m.)

18

19

20

21

22

23

24

25

1                          C E R T I F I C A T E

2

3

4              I, Brenda K. Hancock, RMR, CRR and Official Court

5      Reporter of the United States District Court, do hereby certify

6      that the foregoing transcript constitutes, to the best of my

7      knowledge, skill, ability and belief, a true and accurate

8      transcription of the within proceedings.

9

10

11

12

13     Date:  ___7/7/23_____      */s/ Brenda K. Hancock*
                                   Brenda K. Hancock, RMR, CRR
14                                 Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25