# EXHIBIT 20

(January 16, 2020 Letter from Voris to H. Cooper)



**SAINT MICHAEL'S MEDIA**

2900 Hilton Road | (866) 738 1207
Ferndale, Michigan | fax (248) 545 5726
48220 | TheOneTrueFaith.TV

1



**EXHIBIT**

Gary Michael Voris  Exhibit 18  8/8/23

Howard M. Cooper, Esq.
Todd & Weld, LLP
One Federal Street
Boston, MA 02110

January 16, 2020

Re: Reverend Georges de Laire

Dear Mr. Cooper:

We received your letter dated December 26, 2019 on January 3, 2020. According to our e-mail sent on January 6, 2020, the following is Church Militant's response.

Regarding the articles and video reportage you reference published on January 17, 2019, April 15, 2019, and June 25, 2019, we strongly disagree with your reductionist and indeed defamatory characterization that any of the above set out to "target" Reverend de Laire and his character with "outright falsehoods" and inaccurate implications," or that we have chosen "to ignore and/or failed" to appropriately research "even the most basic information" concerning Reverend de Laire and his actions prior to publishing the above. Such representations on your part are indeed gratuitous and without any merit whatsoever.

Moreover, an attorney of your experience is aware that statements are not actionable in defamation unless they are capable of being proved true or false. *Pan Am Sys., Inc. v. Atl Ne. Rails & Prots, Inc.*, 804 F.3d 59, 64 (1st Cir. 2015). When a reporter "outlines the facts available to him, thus making it clear that the challenged statements represent his own interpretation of those facts and leaving the reader free to draw his own conclusions, those statements are generally protected by the First Amendment." *Riley v. Harr*, 292 F.3d 282, 289 (1st Cir. 2002). "[E]ven a provably false statement is not actionable if 'it is plain that the speaker is expressing a subjective view ... rather than claiming to be in possession of objectively verifiable facts.' *Id.*, citing *Gray v. St. Martin's Press, Inc.*, 221 F.3d 243, 248 (1st Cir. 2000). As set forth below, none of the cited statements satisfy this standard.

Moreover, Reverend de Laire is a *public figure* representing the Bishop and Diocese of Manchester and bears a "heavy and often insurmoutnable" burden of proving the reporting was done with actual malice. *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 14 (1st Cir. 2011). Whenever his professional conduct and decision-making is deliberately publicized and advertised by him or the

Diocese, the public, especially the faithful readership and viewership of *Church Militant* and *St. Michael's Media* have a right to learn of such decision-making. Journalists such as we have a right to comment and opine upon Reverend de Laire's actions the moment he chooses to divulge them into the public forum, independently of an appointment having been set up prior to time to receive his approval for our public comment. Your suggesting that such consultation is required prior to the Press reporting to the public upon Reverend de Laire's conduct is farcical.

Reverend de Laire is a Roman Catholic priest who is held to a much higher standard as a representative of God ("*alter Christus*") and the Diocese of Manchester ("*judicial vicar*" and "*vicar episcopal*" of the Bishop of Manchester). Like the bishop whom he serves, he is responsible for his own conduct and those decisions that he makes both privately and publicly which have impact the public. The days of faithful lay Catholics like us needing "permission" from ecclesiastical superiors prior to criticizing the inconsistencies of their persons or incongruent decisions are long gone. The blind faith that the faithful once placed in Roman Catholic clergy has been utterly destroyed thanks to the shameful clergy abuse sex scandals that continue to roil the Roman Catholic Church and the lay faithful who increasingly are asking themselves, "How can we continue to trust these priests?" Hence the first and greatest liability, Mr. Cooper, is with the *clergy* who have repeatedly again and again and again betrayed the trust that the faithful have placed in their ecclesiastical superiors, not with members of the *Press* who merely report the news and items of public interest that are brought to them by verified fonts and sources with access to the truth.

Regarding your reference to Fr. Leonard Feeney, it is important to note that Fr. Feeney is *dead*. Injecting any ascriptions of "antisemitism" or "excommunication" that have been made by some against a deceased individual such as Fr. Feeney to the instant discussion regarding our reporting on Reverend de Laire is a red herring that is clearly immaterial to the issues you raise. However since you mention them, you should know that the St. Benedict Center and its members, as is prominently advertised on the front page of its website catholicism.org under the rubric, "Doctrinal Beliefs," subject all of their publicly asserted doctrines to the judgment of the Roman Catholic Church.

More importantly, it would appear that your client Reverend de Laire has ill-informed you. Your assertion of fact that "Rome pronounced the matter closed" is patently false. The fourteen members of the St. Benedict Center have, to the contrary, all presented administrative appeals on an individual basis ("hierarchical recourse") to the Vatican. As such, the matter is far from "closed." Fourteen administrative appeals are still pending. What has your client told you – or not told you – exactly? Current events concerning the St. Benedict Center and its members remain of public interest among Catholic nationally and internationally. Reverend de Laire's crude attempt through a lawyer's missive to intimidate and shut down our continued accurate reporting of the news is shameful on the part of a clergyman.

3

Regarding any other matters pertaining to the St. Benedict Center and its members, you are invited to seek comment from the members themselves prior to communicating false assertions of fact in writing to Church Militant, St. Michael's Media, and ourselves.

As for your unsubstantiated and ridiculous claim that we have misrepresented to our readers and the public at large any conduct on the part of your client, you make yet again another demonstrably false charge by asserting in writing that "Father de Laire did not accuse the Saint Benedict Center of heresy for teaching a well-accepted Catholic doctrine, and yet you implied such with the title and contents of your January 17, 2019 article."

Once more, what is your client Reverend de Laire exactly telling you? I repeat this salient question because the *third line* of the undated precept entitled "Let it Be Known" issued by Reverend de Laire states, "That those so corrected by the Congregation for the Doctrine of the Faith have persisted in their obstinacy (cf. *CIC* 1983 canons, 750, 751)." Canon 751, Mr. Cooper, happens to be the canonical statute treating *heresy*. Reverend de Laire's referencing of the canon concerning "heresy" with respect to the doctrine *Extra Ecclesiam Nulla Salus* affirmed publicly by the members of the St. Benedict Center is to be imputed to him, not to us.

Regarding any emotional condition of Reverend de Laire, we merely reported impressions that were given to us based upon multiple independent sources, namely individuals who have had direct dealings with him in his professional capacity. All sources, who wished to remain anonymous out of fear of reprisal from Reverend de Laire, are deeply concerned about the vicar's emotional stability based upon his communications and decisions taken over the past years.

All of the terms narrated in the bullet points you reference on page 3 of your aforesaid letter have indeed been reported to us by *other canon lawyers*, including one source, an official serving the Holy Father in the Vatican who is quite familiar with Reverend de Laire and his professional conduct on the part of the Diocese and in interaction with the Holy See.

For example, our reporting of the application of the Italian appellation *"incasinaro"* in application to Reverend de Laire was expressed to us by an official currently serving in the Holy See. We at Church Militant and St. Michael's Media vetted the source and in turn reported the information we received from different sources to our readership. That is our right and that is indeed our duty to the public regarding public figures. We don't *have* to make anything up, we don't make anything up against the implication if not accusation that you make in your letter.

As for Reverend de Laire's acquisition of a house valued at $1.5 million, we simply reported the marked contrast between Pope Francis having chosen to reside humbly in a hotel suite of three rooms instead of living in the sprawling Apostolic Palace of the Vatican City State and Reverend de Laire's lavish personal preference for an expensive home. We never implied any impropriety regarding mode or manner of acquisition. We remain deeply concerned, however, in an age where more and more prelates have been caught living lavish lifestyles at the expense of the faithful's donations (e.g. Bishop Bransfield of the Diocese of Wheeling, etc.), of the disconnect between

4

such lavish living and the example set by Christ and Pope Francis: poverty and humility. But to be clear, we are not nor did not ascribe any allegation of impropriety on the part of Reverend de Laire in this regard; the article speaks for itself in this regard.

As for any "threatening phone call" received by Reverend de Laire, we deeply regret that occurrence, but can hardly be held responsible for it. We did not disseminate any phone number assigned to Reverend de Laire. As for his property address, that information was obtained from public records, which anyone has access to.

Regarding the reference you make to complaints filed against Reverend de Laire, we note that you do not deny any accusations denounced in said complaints: You employ the terms "highly confidential," "particular bias," and the fact that neither the Holy See nor Bishop Libasci have "credited" the "complaint" is hardly a coherent argument for any complaint's alleged lack of foundation, since you yourself write that said complaint is purportedly "highly confidential." The Holy See has acknowledged globally the allegations made against former Cardinal McCarrick, and yet has still not and may never release any "file" or all complaints received by the Vatican over the years against McCarrick. Your client cannot invoke confidentiality of any alleged documents only to invoke opposite publicity concerning them as proof of any lack of credibility to be ascribed to said complaints.

Regarding the video published on April 15, 2019, you are in error in stating that we have made "several false statements about Father de Laire." You reference the fact that the Diocese of Manchester has prohibited the celebration of the Mass, and yet that Reverend de Laire has "arranged for a priest to travel to a nearby parish to provide a weekend Mass to members of the Saint Benedict Center." However, you fail very openly to mention that Mass and the Sacrament of Reconciliation was being offered by an approved chaplain *every day of the week, not just on Sunday, and not away from the premises of the Saint Benedict Center.* So we can hardly be accused of committing "libel and defamation" for reporting the full truth, as opposed to the partial truth which you narrate as fact in your letter.

As for Reverend de Laire being a "fierce advocate" for the members of the Saint Benedict Center, based upon the information we have received from faithful within the Diocese of Manchester, coupled with the correspondence and precept released by the same Diocese, we disagree. Your repeated false allegation that we have not conducted even a "basic investigation" by making reference to Reverend de Laire's title of "judicial vicar" instead of "episcopal vicar" is quite silly, given that your client holds *both* titles as *one person.*

In your capacity of counsel for Reverend de Laire, it does not suffice to make a false allegation of us not having "evidently" conducted any "investigation", "modest", "basic", or other. On the one hand, you accuse us of not having conducted any research to support our reporting, but on the other, you yourself failed to contact *Church Militant, St. Michael's Media,* or any of us to conduct due diligence prior to accusing us of failing in our journalistic obligations. One cannot critique others of that which one oneself is responsible, Mr. Cooper.

We thank you for concurring with our right to have "a poor opinion of Father de Laire" and to "disagree with him or his actions." The tenor of your letter, at times, gives the impression that anyone doing so would be in the wrong. However, you cross the line entirely by asserting that we have reported outright falsehoods and substantially untrue facts about the Reverend de Laire for supposed goals and reasons you fail to substantiate whatsoever, going so far as to imply that we acted improperly in an attempt to "raise funds." Your false assertion of fact that we reported a number of public and demonstrable grave facts concerning Reverend de Laire "in a conscious effort to hold him up to public ridicule and scorn" does not constitute "libel," because it was never our intention to "hold him up to ridicule and scorn" to begin with.

Reverend de Laire also falsely asserts that we never contacted him for comment about our reports. This is false. We emailed him in April 2019 specifically to request his response to our queries, and he wrote back, offering no substantive response.

The overarching mission of *Church Militant* and all of the journalists and faithful who are employed by it is to report the news and information we receive concerning the Catholic Church and the clergy and officials who are supposed to serve God and the faithful representing our Church. Just because a judicial vicar, or episcopal vicar, or both does not like what we report; just because he may not like what fair opinion and analysis we offer to the public regarding a public figure; just because a cleric does not like that we hold him up to a higher standard and shed light on facts he may not prefer to have reported and divulged in the public domain does not mean that the press should stop fulfilling its mission of bringing the truth to the faithful who need to know who their leaders are and what they really are up to.

As for the requirements that you stipulated in your letter dated December 26, 2019, kindly know that *Church Militant* and *Saint Michael's Media* is perfectly willing to publish additional documentation it has received from those private faithful who have suffered directly in their experiences with Reverend de Laire, so that the faithful of the Diocese of Manchester, most of all the Holy See, learn more information about Reverend de Laire and how he has badly handled the members of the Saint Benedict Center and other faithful of the Diocese, whose flock he has been appointed to shepherd in lieu of maltreating.

The public has a right to know what Reverend de Laire has done and is doing, and we have the obligation to report it.

Very truly yours,

Michael Voris, STB
CEO/President
St. Michael's Media

03209223 v1