UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| VERY REVEREND GEORGES F. de LAIRE, J.C.L.,<br><br>Plaintiff,<br><br>v.<br><br>GARY MICHAEL VORIS, ANITA CAREY, ST. MICHAEL'S MEDIA a/k/a CHURCH MILITANT, and MARC BALESTRIERI<br><br>Defendants. | Civil No. 1:21-cv-00131-JL |

### DEFENDANT VORIS' OBJECTION TO PLAINTIFF'S MOTION *IN LIMINE* TO INTRODUCE INTO EVIDENCE ALL FACTS RELATED TO GARY MICHAEL VORIS' CONDUCT THAT LED TO HIS RESIGNATION FROM ST. MICHAEL'S MEDIA A/K/A CHURCH MILITANT

NOW COMES Gary Michael Voris, by and through counsel, and respectfully objects to the plaintiff's motion in limine to introduce evidence of facts related to Mr. Voris' resignation from St. Michael's Media a/k/a Church Militant. Mr. Voris adopts by reference the objection made by St. Michael's Media in response to plaintiff's motion in limine, and incorporates that objection as if fully restated herein. In addition to those arguments, Mr. Voris states as follows:

1. The plaintiff argues that he should be entitled to introduce evidence related to Mr. Voris' conduct, "including lying about his sexual orientation," because it is probative of his character for truthfulness.

2. This is a flawed argument for several reasons.

3. First, F.R.C.P 608(b), upon which the plaintiff relies, concerns "specific instances of conduct." But the plaintiff has not established–by proffer or otherwise–that Mr. Voris, in fact,

lied to anyone. He has provided no statement, suggested no witness, nor identified any document establishing or alleging that Mr. Voris made any specific false statement about his sexuality to anyone at St. Michael's Media. The plaintiff has thus not proffered a specific instance of conduct as required by the rule.

4. Second, the rule provides that "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Despite this prohibition, that is precisely what the plaintiff proposes to do.

5. Third, permitting the plaintiff to introduce evidence concerning Mr. Voris' alleged workplace statements about his sexuality–which the plaintiff has not even established occurred–and then allowing the plaintiff to contradict Voris' denials that he made any such statements, would create a trial within a trial in which (presumably) the plaintiff would attempt to present evidence that Mr. Voris denied his sexual orientation at work. Mr. Voris would then be entitled to challenge whether he ever even made those statements at all. None of this has anything whatsoever to do with whether the plaintiff was defamed. "Rule 608(b) prohibits the examiner from introducing extrinsic evidence, such as calling other witnesses, to rebut the witness's statements. *State v. Hopkins,* 136 N.H. 272, 276 (1992). The objective is to avoid a trial within a trial; that is, to avoid the litigation of issues that are collateral to the case at hand." *State v. Miller,* 155 N.H. 246, 249 (2007). 4 Handbook of Fed. Evid. § 608:4, Rule 608(b)(1): cross-examination as to specific acts of conduct of the witness; extrinsic evidence (9th ed.)(quotations in original). See also, *Chretien v. New Hampshire State Prison, Warden,* 2008 WL 1805802 at *8 (quoting *Miller*, 155 N.H. at 250).

6. The evidence should excluded based on F.R.C.P. 403 as well. To the extent that matters related to Mr. Voris' sexual orientation are relevant *at all,* its probative value is *de minimis* and is "substantially outweighed by a danger of…unfair prejudice, confusing the issues…[or] wasting time."

7. The supposed relevance of the cross-examination is particularly likely to confuse the issues and cause unfair prejudice given the subject-matter present here.  Placing Mr. Voris' sexual orientation into issue unfairly prejudices him in two contradictory ways.  First, to the extent that one or more jurors may harbor negative views of homosexuals or homosexuality, the evidence would trigger those prejudices.  Second, to the extent that one or more jurors may believe those who believe the traditional Catholic teaching on the subject is uninclusive or bigoted, the evidence would tend to trigger *those* prejudices as well.

8. Simply put, Mr. Voris' sexual orientation, his employer's view of the morality of homosexuality, and Mr. Voris' own views concerning the morality of his own past conduct, are fraught with potential prejudice and add nothing but complexity and length to this case.

9. The nature of what the plaintiff chooses to characterize as probative evidence of character for untruthfulness simply isn't. As Mr. Voris publicly explained in a video he published on Youtube, he has struggled to avoid engaging in conduct that he does not believe is consistent with God's plan.

10. In other words, while the details of each of our personal view of morality, and the myriad ways in which we all fall short vary, the *fact* that we fall short is something we all share.

11.     The plaintiff would apparently have the Court find that not publicly confessing such a failure reflects character for untruthfulness. It doesn't. It reflects that Mr. Voris is as human as anyone–indeed, everyone—else.

12.     While some false statements reflect a character for dishonesty, Mr. Voris' non-disclosure[1] of his ability to resist what he considers to be immoral conduct is not one of them.

13.     The cases cited by the plaintiff do not support the admissibility of the evidence.

14.     The plaintiff relies on the theory that lying on an employment application is relevant to credibility. This reliance is badly misplaced.

15.     In *United States v. Tse,* 375 F.3d 148 (1st Cir.2004), the court expressly stated that "Tse's questions about the employment application had no conceivable relevance other than to impeach Williams as untruthful. Using the employment application for this purpose would be a clear violation of Rule 608(b)." *Id.* at 166.

16.     The court allowed the government to inquire into only two statements on the employment application: the dates of his employment at Gilette and the statement that he had been a student at Bunker Hill Community College. *Id.*

17.     Notably, these two inquiries appear to be easily determinable, factual questions and would be unlikely to send the trial down a rabbit hole of factual dispute and interpretation.

18.     Despite the narrow, factual nature of that line of questioning, the court noted that it "garnered mixed results." *Id.* n.17. Tse did not establish whether the witness had made false statements about his dates of employment. *Id.* And while the witness admitted he had not been "a full-time student at Bunker Hill College," *id.,* the case does not say whether that admission

---

[1] The plaintiff's motion in limine does not clearly state what evidence of untruthfulness it seeks to introduce. Without knowing what false statements the plaintiff believes Mr. Voris made, it is not possible to evaluate the nature of those statements or to respond specifically to the motion.

directly contradicted the apparent claim that he had been a student there. Thus, it may have been the case that the trial became sidetracked by questions such as whether a part-time student is a "student." It certainly could have.

19. The factual questions at issue here are far more slippery than the factual inquiry in *Tse*.

20. Whether a given statement amounts to Mr. Voris "lying about his sexual orientation," as the plaintiff confidently asserts, would require a substantial amount of interpretation.[2] And that kind of interpretation only occurs *after* the jury hears conflicting evidence about whether the as-of-yet undisclosed statements were actually made at all.

21. Finally, the factual context of the cited cases are distinguishable. Both cases cited by the plaintiff involve representations made at the outset of a professional relationship. As described above, *Tse* concerned an employment application and *United States v. Shinderman*, 515 F.3d 5 (1st Cir.2004), concerned statements made on the defendant's application for a medical license, where the court found that "a witness's willingness to lie to the government in an application for a license is highly probative of his character for truthfulness." *Id.* at 17.

22. The facts of the present case do not involve any applications, resumes, or other relationship-initiating documents. Indeed, they could not. Mr. Voris did not *apply* for a job with St. Michael's Media, he *founded* it.

---

[2] The plaintiff's motion in limine is also unclear as to whether it concerns Mr. Voris' *"orientation"* or whether it addresses specific instances of *conduct.* Presumably, most people would not consider mere orientation to be immoral. And Mr. Voris long ago publicly acknowledged that at times in his life, he has experienced himself to be "oriented" toward homosexuality. But it is *conduct* that would likely trigger a contractual morality clause. The plaintiff's motion does not propose how he will establish facts related to conduct.

5

23.   And unlike the defendant in *Shinderman,* Mr. Voris was not communicating with the government, he was communicating with his co-workers and other people he had existing workplace relationships with.[3]

24.   The plaintiff has produced no authority whatsoever to support his claim that evidence of false statements about issues of the deepest personal sense of morality, made (or not made) to people that a person has worked with over long periods of time, are indicative of a general character for truthfulness or untruthfulness.

25.   For these reasons, the motion in limine should be denied.

> Respectfully Submitted
> Gary Michael Voris
> By his attorneys,
> Lehmann Major List, PLLC

May 28, 2024

*/s/Richard J. Lehmann*
_____
Richard J. Lehmann (Bar No. 9339)
6 Garvins Falls Road
Concord, N.H. 03301
(603) 731-5435
rick@nhlawyer.com

CERTIFICATION

I hereby certify that a copy of this pleading was this day forwarded to opposing counsel via the court's electronic service system.

*/s/Richard J. Lehmann*
_____
Richard J. Lehmann

---

[3] Again, absent a proffer by the plaintiff of exactly what evidence he seeks to produce, it is impossible to know the context in which any allegedly false statement were allegedly made.