# EXHIBIT

# A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| VERY REVEREND GEORGES F. de LAIRE, J.C.L., | §<br>§<br>§<br>§ | |
| Plaintiff, | | |
| v. | §<br>§ | Case No. 1:21-cv-00131-JL |
| GARY MICHAEL VORIS, ANITA CAREY, ST MICHAEL'S MEDIAS AKA CHURCH MILITANT and MARC BALESTRIERI, | §<br>§<br>§<br>§ | |
| Defendants. | | |

### AFFIDAVIT OF DEFENDANT MARC BALESTRIERI IN SUPPORT OF HIS RULE 60(b)(4) MOTION TO SET ASIDE DEFAULT JUDGMENT AS VOID DUE TO LACK OF PERSONAL JURISDICTION

I, Marc Balestrieri, make the following statements, based on my personal knowledge:

1.  I am over the age of 18.

2.  I was born and raised in the United States and Europe.

3.  I believe that the Reverend Georges de Laire (hereinafter "Plaintiff"), contrary to what is asserted in his Affidavit, has, since 2016 when I first began interacting with him professionally as a canon lawyer, is aware of the written grievances that have been filed against him before his Diocesan Bishop and the Holy See.  I believe, contrary to what he asserts in his Affidavit, that he has taken cognizance of the reasons within those complaints that have been filed against him as a direct consequence of his actions.

4.  I attended the University of Strasbourg located in France. While studying theology, I took an interest in canon law.  A professor recommended that I study it.  I began volunteering as an intern at the local Archdiocesan Tribunal. I was appointed *ad casum* as an ecclesiastical Notary, despite not having completed any formal studies in canon law. Encouraged by my Tribunal Superiors, upon having completed the requisite philosophical and theological studies, I attended the Faculty of Canon Law of the Pontifical Gregorian University in Rome as a layman on my own recognizance, in order to serve the

faithful and Holy Mother Church. I earned my *Juris Canonici Licentia* from the Gregorian in February of 1998.

5.   Given that Plaintiff obtained his licentiate in 2012, 14 years after I did, the undersigned appears to have 14 years' more professional experience than he does.

6.   Upon having obtained my professional degree and license to practice, I subsequently served 5 Archdiocesan Tribunals internationally, in all, comprising the Archdiocese of Strasbourg; the Archdiocese of Westminster; the Archdiocese of Los Angeles; the Archdiocese of Saint Louis; and the Archdiocese of Saint Paul and Minneapolis. In 2009, I was recruited by the Dean of the Tribunal of the Roman Rota, the Church's global supreme judicial court of appeal, to serve as a staff canonist in the Vatican for the Holy See. While serving in the Catholic Church's supreme judicial court, I received advanced internal training in Rotal Jurisprudence at the Tribunal's law school.  Over the years, I have held the canonical offices of Collegial Judge *Ponens* (instructing judge) in First and Second Instances, Promoter of Justice (prosecutor), Defender of the Bond, and Auditor.  I have exercised the functions of Delegate ex cann. 1717 and 1720 CIC, Assessor, Notary, and Penal Investigator.  Since 1998, I have provided canonical counsel and representation as a licensed canon lawyer ("Procurator", "Advocate", "Counsellor").  I have taught Canon Law as an Adjunct Professor of the University of Saint Thomas for the Saint Paul Seminary School of Divinity.  I am fluent in English, Italian, French, Spanish, and Latin, and proficient in German.

7.   Regarding the article, *"Judicial Vicar changes Dogma into Heresy",* I was a direct and indirect source for content of a draft that was subsequently uploaded and published by an unknown third party working for Church Militant, A.K.A. "St. Michael's Media".

8.   As a direct eyewitness having interacted with the Plaintiff regarding three separate canonical matters or cases that the said judicial vicar had authority over, it is my personal opinion based on personal interaction for professional reasons that he exhibited emotional instability at times during the same interaction. Others also shared the same personal opinion based on their own separate interaction with Plaintiff.

9.  It is my personal opinion, based on direct eyewitness interaction with him in my capacity at the time as a canon lawyer having repeated contact with him over some years as described above, that Plaintiff was incompetent in canonical matters. In support of this assertion, the undersigned submits as attachments Exhibits B and C, in which grave complaints were filed directly based upon Plaintiff's mishandling of the canonical cases that he oversaw or injected himself in in his capacity of judicial vicar. For reasons of confidentiality, identifying information pertaining to the parties' names and case numbers has been redacted.  The originals are in the Archives of the Diocese of Manchester.

10.  Complaints and denunciations for canonical violations total at least five (5) in all.  They were filed by at least three separate individuals on the following dates: 2 November 2016; 23 August 2017; 24 August 2017, 13 August 2018; 7 September 2018.  These records are in the possession of the Bishop of Manchester, the Most Reverend Peter Libasci with copies having been sent to the Holy See for cognizance and action thereupon.

11.  An official of a major Roman Dicastery directly informed me of Plaintiff having a reputation for being an *"incasinaro"*, Italian for "troublemaker" by reason of him having "botched" canonical matters that the official concerned related to me.

12.  An employee within the Diocese of Manchester stated to me that Plaintiff had been "outsourcing" work product to another canon lawyer.

13.  The undersigned has personal and direct experience of Plaintiff being vindictive and manipulative.  Others have also shared with me a concurring opinion based upon their own personal and direct experience with Plaintiff.

14.  In a text message sent to me at "15:13" on "Thursday, June 23, 2022", Brother André Marie Villarubia of the Saint Benedict Center wrote: "Please correct me if I am wrong, Marc, but my recollection is that you are not now, nor were you ever mandated as either my (our: SBC's) advocate or procurator. You [sic] work for us has been exclusively as a consultant/counsellor." This communication debunks the inaccurate assertion of Plaintiff that the undersigned was the "canon lawyer" of the "SBC", for in canon

law, one is not recognized by the Church as having power of representation or defense of a client without having received and been recognized by a local Diocese as being in possession of a "legitimate mandate" of appointment. Without said mandate, one is not in canon law the "canon lawyer" of the party concerned. The statement by Plaintiff in Point n. 20 of his Affidavit in not consonant with the above-narrated communication of Br. André Villarubia nor the undersigned.

15. In October 2018, between the 8th and 11th, the Canon Law Society of America hosted its annual convention in Phoenix, Arizona. Exhibit D references both Plaintiff and Defendant as having been in attendance.

16. During said Convention, Plaintiff approached the undersigned Defendant and for 20 minutes, practically, if not on, the point of tears, apologized for the manner by which he as judicial vicar and judge had been conducting the cases in which I was serving clients at the time before the Diocese of Manchester. This 20-minute side conversation, held in a public space of the convention meeting spaces occurred while many attendees were passing by (cf. Exhibits B and C). Plaintiff exhibited to the undersigned significant emotional instability and embarrassment, saying, *inter alia, "I never wanted to become a canon lawyer, I did what I was ordered to do by my Bishop."* I asked him not to commit again the grave violations which he did as judicial vicar. He told me he would not do so again. His face was flush, he was agitated, and fearful of repercussions by reason of the filing of the complaints and denunciations referenced *supra* in Point no. 10 and Exhibits B and C. The is the undersigned Defendant's own personal and direct testimony of said event, significant in that Plaintiff at the time admitted that he had committed grave violations in canon law as judicial vicar.

17. *Nemo auditur propriam turpitudinem allegans",* translated commonly, *"No one can be heard to invoke his own turpitude."* I respectfully submit that, as was personally witnessed by me during the 20-minute meeting held with Plaintiff detailed *supra* on the occasion of the national Canon Law Society of America Convention held in Phoenix, Arizona in 2018, Plaintiff himself is the cause, substantively, for his own verifiable commission of grave violations in canon law, as experienced by multiple individuals including

the undersigned Defendant, and this to their grave spiritual, moral, social, and temporal detriment.

18. If this Defendant acted as a source for the article at issue, it was because the Most Reverend Peter Libasci, not to mention Plaintiff in contrast to his representations made to me in October 2018, utterly failed to address and redress the verifiable grave violations in canon law that have been committed by Plaintiff.

Signed under penalty of perjury.

Respectfully submitted,

Marc Balestrieri, *pro se*