UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Very Reverend Georges F. de Laire, J.C.L.

     v.                                               Civil No. 21-cv-131-JL

Gary Michael Voris, et al.

**O R D E R**

After settling his defamation claims against all other defendants, Fr. de Laire moved for judgment against defaulted defendant, Marc Balestrieri, seeking an award of $100,000.00 in damages. Mr. Balestrieri filed a response to Fr. de Laire's motion, in which he disputes the factual allegations supporting the defamation claim against him. The court held a hearing on the motion on April 25 and June 25, 2025.

The court has subject matter jurisdiction over this case under 28 U.S.C. § 1332 based on the diversity of citizenship of the parties and the amount in controversy. The court has specific personal jurisdiction over Mr. Balestrieri based on his contacts with New Hampshire related to this case.[1] For the reasons that follow, the court grants Fr. de Laire's motion for default judgment and awards damages in the amount of $50,000.00 against Mr. Balestrieri.[2]

**I. Background**

Several previous orders provide detailed factual background in this case.[3] The court summarizes the necessary facts here without repeating the detail previously provided. Father de Laire is a priest of the Catholic Church. He has served as the Judicial Vicar and the Vicar for

---

[1] Doc. nos. 286 & 294.
[2] Doc. no. 283.
[3] Doc. nos. 13, 24, 81, 82, 84, 113, 170, & 194.

Canonical Affairs for the Roman Catholic Diocese of Manchester, New Hampshire. He is also the pastor of St. Pius X parish and resides in Manchester, New Hampshire.

In his roles with the Diocese, particularly as Vicar for Canonical Affairs, Fr. de Laire served as a liaison between the Diocese and a group of Catholics known as the Slaves of the Immaculate Heart of Mary, which is incorporated as the Saint Benedict Center ("SBC") and is located in southwest New Hampshire. In 2016, a department of the Roman Catholic Church in Rome determined that the SBC's position on a religious doctrine, *Extra Eccesiam Nulla Salus* or "Outside of the Church There is No Salvation," was unacceptable. Despite notice that its position on church doctrine was unacceptable, the SBC continued to adhere to the same teachings deemed unacceptable by Church authorities. As a result, Fr. de Laire signed a Decree of Precepts on January 3, 2019, that set certain obligations and restrictions on the SBC. In response to the Decree of Precepts and public statements made by Fr. de Laire, Church Militant, an online media outlet of St. Michael's Media located in Michigan, published an article on January 17, 2019, that contained defamatory statements about Fr. de Laire. Gary Michael Voris then produced a video that included defamatory statements about Fr. de Laire, and Anita Carey wrote an article that again included defamatory statements about Fr. de Laire, taken from Mr. Balestrieri's article.[4]

The January 17, 2019 article was titled "NH VICAR CHANGES DOGMA INTO HERESY," with a subtitle: "Fr. Georges de Laire cracks down on Saint Benedict Center" and included a photograph of Fr. de Laire. Importantly, the article did not have a byline or otherwise identify its author. In its body, the article supported the SBC's side of the doctrinal controversy

---

[4] Mr. Voris was president of St. Michael's Media. Mr. Balestrieri is a licentiate in (authorized to practice) canon law, who advised Church Militant and the SBC on canonical matters. Ms. Carey was a reporter for Church Militant.

about "outside the Church there is no salvation" and attacked Fr. de Laire, making a series of statements that accused him of incompetence and worse.

Fr. de Laire filed suit against St. Michael's Media, Mr. Voris, and Ms. Carey, originally alleging that Mr. Voris wrote the January 17, 2019 article and published the subsequent video about Fr. de Laire. Defendants' answer originally confirmed that Mr. Voris was the author of the article. In the course of discovery, however, the court required defendants to identify the source of the information in the article, which forced defendants to disclose Mr. Balestrieri's role as the actual author of the article.[5] Fr. de Laire filed an amended complaint on June 14, 2022, that included Mr. Balestrieri as a defendant, alleged that Mr. Balestrieri defamed Fr. de Laire, and sought damages against him.[6] Mr. Balestrieri then evaded service, which required the court to grant Fr. de Laire's motion for alternative service.[7] In October 2022, Fr. de Laire filed an affidavit to show service of the complaint and summons on Mr. Balestrieri.[8] When Mr. Balestrieri failed to respond, the court entered default.[9] Mr. Balestrieri remains in default.[10]

Despite his default, Mr. Balestrieri appeared at the court hearing on defendants' motion for summary judgment on June 15, 2023. While there, he was served with a subpoena for a deposition. He agreed to be deposed, which was scheduled at a time and place where he agreed to be present. Mr. Balestrieri, however, did not appear for his deposition and, as a result, was not deposed in this case. Thereafter, Mr. Balestrieri continued to contact the court, was repeatedly

---

[5] Doc. no. 113.
[6] Doc. no. 115.
[7] End. Ors. Sept. 14, 2022 & Sept. 15, 2022.
[8] Doc. no. 133.
[9] Doc. no. 134.
[10] Doc. no. 294.

advised of the limitations imposed by his default status, and was advised that he was required to successfully move to set aside default before he could participate in the case.

Mr. Balestrieri waited until the eleventh hour, when Fr. de Laire's motion for default judgment against him was pending, to move to set aside default. That motion was based on Mr. Balestrieri's previously rejected theory that the court lacked personal jurisdiction over him. The court denied Mr. Balestrieri's motion to set aside default.[11]

Fr. de Laire submitted his affidavit in support of his motion for default judgment. He states that being a priest has been his "life's calling" and that "[s]erving in the church is [his] life."[12] He also states: "To have my competency, my motivations, and my character not just questioned but attacked on the Internet shook me to my core. It made me afraid. I accept the challenges that God puts in front of me. But I have had difficulty through today accepting that someone like Marc Balestrieri whom I knew and professionally dealt with could do what he did."[13] After the article was published, Fr. de Laire saw comments published by Church Militant in response to the article, which were negative about him, and he received communications from the public. He felt as if he were walking around with a scarlet letter on his chest. He was told by colleagues that others in the Church were inquiring about his character. He also received threatening voicemail messages and experienced other instances of threatening conduct by others. As a result, Fr. de Laire received additional psychiatric services.

The court held a hearing on Fr. de Laire's motion for default judgment on April 25 and June 25 to determine what damages, if any, the court would award. Fr. de Laire testified and was cross-examined by Mr. Balestrieri. Mr. Balestrieri also testified.

---

[11] *Id.*
[12] Doc. no. 289-2, at 1.
[13] *Id.*

4

Fr. de Laire testified that he experienced anxiety, depression, and attention deficit/hyperactivity disorder, and received treatment and medication for those conditions, before Church Militant published Mr. Balestrieri's false and defamatory statements about him.[14] As his treatment for those conditions continued, Fr. de Laire felt he needed less medication and preferred not to take medication unnecessarily. For that reason, he decreased the amount of medication that he was taking.

He also testified that Mr. Balestrieri's false and defamatory statements about him caused significant additional distress. He received threatening emails and telephone calls, and he described other incidents that caused him to be concerned for his safety. He testified that his "congregation" decreased by more than a third within months after the January 17, 2019, article was published.[15]

In addition, two months after publication, his superior, the Bishop of the Diocese of Manchester, ordered Fr. de Laire to leave on vacation, which Fr. de Laire found particularly upsetting because the order came during Lent and parish priests do not take vacations during Lent. He testified that soon after being ordered to leave on vacation he asked to take a sabbatical, his request was granted and the sabbatical began in July 2019. During the sabbatical, he rested and worked to recover from the distress caused by Mr. Balestrieri's false and defamatory statements.

Fr.de Laire's professional standing was diminished by the defamatory article. In 2023, the Bishop reduced the term of Fr.de Laire's appointments as Judicial Vicar and Vicar for

---

[14] Fr. de Laire's treating psychiatrist passed away before the hearing, but her treatment notes confirmed Fr. de Laire's testimony.
[15] The court understood this testimony to suggest that weekend Mass attendance (as opposed to parish membership) declined in that amount.

Canonical Affairs from five years to one year. Then, when the term expired, the Bishop did not reappoint Fr. de Laire to the position of Vicar for Canonical Affairs, leaving that position unfilled. The Bishop also did not reappoint Fr. de Laire to another position, referred to as liaison for religious,[16] and left that position open. This diminished standing caused him great emotional distress.

Mr. Balestrieri testified that he first met Fr. de Laire ten years ago when he represented a respondent in a marriage annulment case before the tribunal in the Diocese of Manchester. Mr. Balestrieri disagreed with Fr.de Laire's actions as Judicial Vicar during that proceeding. Mr. Balestrieri filed complaints of misconduct with the Vatican against Fr. de Laire and others in the Diocese of Manchester arising from Mr. Balestrieri's cases before the tribunal. Mr. Balestrieri believed that his complaints to the Vatican caused Fr. de Laire emotional distress before the defamatory article was published.[17] Mr. Balestrieri suggested that Fr. de Laire's work as Judicial Vicar might have harmed his reputation and that other factors might have reduced the numbers of parishioners at St. Pius. Mr. Balestrieri testified that he had interactions with Fr. de Laire over the ten years after he first met him, which he believed showed Fr. de Laire had emotional instability.

**II. Analysis**

Fr. de Laire moves for default judgment against Mr. Balestrieri on his defamation claim, which arises from defamatory statements published in the January 17, 2019, article, as follows:

> (1) Father de Laire is said by current work colleagues to be emotionally unstable in his role as chief canonical judge of the diocese and counselor to his bishop.

---

[16] The court understood this to describe the position of the point of contact between the Diocese and religious orders.
[17] Mr. Balestrieri acknowledged during cross examination that he received no response on his complaints from the Vatican.

>(2) Father de Laire is said to be desperate to repair his image and save his chances at being promoted as bishop or an official of the Roman Curia.
>(3) Father de Laire conducts his duties with incompetence in canonical matters that is also apparently well-known and corroborated in the Roman Curia.
>(4) Father de Laire is nicknamed in the Roman Curia as an incasinaro, "a troublemaker," owing to his notorious botching of canonical cases involving clergy and other matters.
>(5) Multiple independent sources in the Roman Curia say he has repeatedly botched diocesan cases and embarrassed his bishop before the Roman congregations of the Curia.
>(6) Father de Laire is currently outsourcing work product that he as a canon lawyer is being paid well by the diocese to complete himself.
>(7) Priests and laity who currently work with him in the diocese say that Father de Laire is a vindictive and manipulative clericalist who pines to be named a bishop or an official of the Congregation for the Doctrine of the Faith.
>(8) At least three complaints against de Laire have been filed with the Holy See that together allege corruption, abuse of office, grave violations of the law, and incompetence as a canonist.[18]

Mr. Balestrieri filed a one-page response, with four exhibits, in which he denies the facts alleged against him in the amended complaint and asks that Fr. de Laire's motion be denied.[19]

    **A. Applicable standard**. After the court enters default against a defendant and when the amount of damages is not a "sum certain," the plaintiff must apply to the court for default judgment. *See* Fed. R. Civ. P. 55(b)(2). The party in default is deemed "to have conceded the truth of the factual allegations in the complaint." *Ortiz-Gonzalez v. Fonovisa*, 277 F.3d 59, 62 (1st Cir. 2002); *see also Universitas Educ., LLC v. Granderson*, 98 F.4th 357, 377 (1st Cir. 2024). Despite that admission, the court "may examine a plaintiff's complaint, taking all well-

---

[18] Doc. no. 170, at 20-21. For purposes of his motion for default judgment against Mr. Balestrieri, Fr. de Laire does not pursue the ninth and tenth defamatory statements that were alleged in his amended complaint and identified in the court's order of partial summary judgment.

[19] Mr. Balestrieri's exhibits are an unworn statement, copies of two unidentified and partially redacted documents that Mr. Balestrieri represents are from the Diocese's archives, and a copy of "2018 General Convention Attendees." Doc. no. 292-1-4. Mr. Balestrieri testified at the hearing about seeking Fr. de Laire at the Annual Canon Law Society of America Convention in October 2018, and the list of attendees likely refers to that Convention.

pleaded factual allegations as true, to determine whether it alleges a cause of action." *Ramos-Falcon v. Autoridad de Energia Electrica*, 301 F.3d 1, 2 (1st Cir. 2002). The court may hold a hearing when certain matters are in dispute, but a hearing is not required in all cases. Fed. R. Civ. P. 55(b)(2); *Universitas Educ.*, 98 F.4th at 377; *In re The Home Rests., Inc.*, 285 F.3d 111, 114 (1st Cir. 2002).

      **B. Cause of action**. By virtue of default, Mr. Balestrieri has conceded that the eight statements are both false and defamatory. *KPS & Assoc., Inc. v. Designs by FMC, Inc.*, 318 F.3d 1, 19 (1st Cir. 2003). He has also conceded (by default) that he acted with actual malice when he wrote and published statements 1, 3, 4, 5, 6, and the part of 8 that alleges Fr. de Laire's incompetence as a canonist. The court addressed the merits of Fr. de Laire's defamation claim in the context of motions filed by the settling defendants and concluded that Fr. de Laire stated a claim for defamation both in the context of a private person and as a limited purpose public figure.[20] Because Mr. Balestrieri wrote the defamatory statements in the January 17, 2019 article and refused to participate in this case, the court is satisfied that Fr. de Laire states an actionable claim of defamation against Mr. Balestrieri, in his capacities both as a private person and as a limited purpose public figure based on the listed statements.[21]

---

[20] Doc. nos. 24, 113, and 170. The court also concluded that Statement 10 implicated Fr. de Laire's role as a limited purpose public figure, but Fr. de Laire is not seeking damages from Mr. Balestrieri based on Statement 10.

[21] To prove defamation of a private figure, the plaintiff must show "that the defendant failed to exercise reasonable care in publishing a false and defamatory statement of fact about the plaintiff to a third party." *Russo v. N.H. Neurospine Inst., P.A.*, 2024 DNH 101, 2024 WL 4871726, at *7 (D.N.H. Nov. 22, 2024). Statements are defamatory "if they hold the plaintiff up to contempt, hatred, scorn or ridicule, or tend to impair the plaintiff's standing in the community." *Frese v. Formella*, 53 F.4th 1, 7 (1st Cir. 2022) (applying New Hampshire law). In the context of a limited purpose public figure, the plaintiff must prove that the defendant defamed him with actual malice. *Sindi v. El-Moslimany*, 896 F.3d 1, 14 (1st Cir. 2018).

**C. Damages**. Fr. de Laire seeks $100,000 in damages.[22] He asserts that Mr. Balestrieri's defamatory statements in the January 17, 2019, article caused him significant reputational harm and emotional distress. When the amount of damages sought is not a sum certain, the plaintiff must establish the amount of damages through proof. *KPS & Assocs.*, 318 F.3d at 19.

Under New Hampshire law, "no proof of specific damages is required when the jury could find that the defamatory publication charged the plaintiff with a crime or with activities which would tend to injure him in his trade or business, commonly called libel *per se*." *MacDonald v. Jacobs*, 171 N.H. 668, 674, 201 A.3d 1253, 1259 (2019).; *see also Martin v. Mooney*, 448 F. Supp. 3d 72, 84 (D.N.H. 2020). "A statement that is defamatory per se is defamatory on its face; therefore, a plaintiff can recover as general damages all damages which would normally result from such a defamation, such as harm to his reputation, without needing to prove these damages specifically." *MacDonald*, 171 at 674 (internal quotation marks omitted). General damages for defamation may include compensation for proven injuries and other injury, such as emotional distress, that is assumed but not proven. *F.A.A. v. Cooper*, 566 U.S. 284, 300 (2012). "[S]pecific proof of emotional harm is not required to recover general damages for dignitary torts [such as defamation.]" *Id.*

Here, Fr. de Laire is not seeking economic damages for injury to his trade or business, such as a reduction in his income. He seeks damages for the emotional distress caused by injury to his reputation caused by Mr. Balestrieri's false and defamatory statements. Fr. de Laire also seeks damages for additional emotional distress that he experienced due to angry, nasty, and

---

[22] Fr. de Laire initially also sought enhanced compensatory damages but later limited the claim to compensatory damages.

9

threatening communications, and incidents that he perceived to be threatening, which involved third parties, and occurred after publication of the January 17 article.

Mr. Balestrieri's statements constitute defamation per se. Mr. Balestrieri stated, among other things, that Fr. de Laire was "emotionally unstable in his role as chief canonical judge," was incompetent, botched cases, had a damaged professional image, and outsourced his work.[23] Mr. Balestrieri also wrote that complaints against Fr. de Laire alleged corruption. Those statements harmed Fr. de Laire's professional reputation.

Fr. de Laire testified about the distress those statements caused him, particularly because of the importance of his chosen career as a priest. Fr. de Laire testified that his congregation at Saint Pius X decreased by a third after the defamatory article was published, which distressed him because the decrease reduced the efficacy of his role as priest in spreading his religious message. The Bishop ordered him to go on a vacation, that is, to leave his parish and other responsibilities during Lent, because of the article. Soon after the forced vacation, Fr. de Laire took a sabbatical to recover from the stress caused by the January 17 article, lasting three months.

After publication of the January 17 article, Fr. de Laire experienced a change in his appointments and responsibilities within the Diocese that demonstrated that his professional standing was diminished. The Bishop reduced the length of Fr. de Laire's term as Judicial Vicar and then did not reappoint him to the positions of Vicar for Canonical Affairs and Liaison to Religious. Fr. de Laire has provided ample support for an award of general damages due to the

---

[23] *Supra* at 6-7.

harm Mr. Balestrieri caused to his reputation.[24]

Fr. de Laire also seeks damages for the additional emotional distress that he experienced because of angry and threatening communications and conduct by third parties, which he attributes to the January 17 article.[25] The court does not award damages for the additional emotional distress caused by third parties.

As noted above, Fr. de Laire is seeking $100,000.00 in damages from Mr. Balestrieri. That amount would seem insufficient if that were the only recovery available to Fr. de Laire for the harm he has experienced because of Mr. Balestrieri's false and defamatory statements published in the January 17 article. Previously, however, he settled his claims against the other defendants for damages (caused by the same defamatory article) to be paid by them. For that reason, the court assesses damages against Mr. Balestrieri in light of the results in the case as a whole to fairly compensate Fr. de Laire for the injuries caused by the false and defamatory statements in the January 17 article. See *SonicSolutions Algae Control, LLC v. Diversified Power*

---

[24] Fr. de Laire's treating psychiatrist passed away before the damages hearing, but the absence of her testimony is not relevant because her treatment notes were available and were admitted without objection.
  In addition, Fr. de Laire's preexisting mental health conditions do not preclude an award of damages in this case. A tortfeasor, such as Mr. Balestrieri, takes his victim as he finds him. *Figueroa-Torres v. Toledo-Davila*, 232 F.3d 270, 275-76 (1st Cir. 2000); *Salem v. Stoneham Police Dep't,* 752 F. Supp. 3d 282, 306 (D. Mass. 2024). For that reason, Mr. Balestrieri is liable for the full extent of the emotional distress he caused due to his defamatory statements, even if the injury is greater because of Fr. de Laire's preexisting conditions. *Figueroa-Torres*, 232 F.3d at 276. The court does not award damages to Fr. de Laire for emotional distress he experienced prior to publication of the January 17 article or for any emotional distress he continued to experience that is unrelated to the harm caused by the January 17 article.

[25] The January 17 article published other statements about Fr. de Laire that are not part of this lawsuit, including statements about his interactions with the SBC, that could have precipitated or provoked the third parties' conduct.

11

*Int'l, LLC*, No. 21-30068-MGM, 2025 WL 2124267, at *8 (D. Mass. July 29, 2025) (discussing challenges of calculating damages for defamation).

In that context, the court concludes that $50,000.00 in general damages from Mr. Balestrieri is an appropriate but not excessive recovery for the harm he has caused Fr. de Laire.[26]

## Conclusion

For these reasons and based on the testimony during the hearing, the court grants Fr. de Laire's motion for default judgment against Mr. Balestrieri (doc. no. 283) and awards Fr. de Laire $50,000.00 in damages.

Defendant Michael Gary Voris's counsel's motion to withdraw (doc. no. 287) is granted.

The clerk of court shall enter judgment in accordance with the court's dispositive orders, including this order, and the notices of settlement entered in this case, and close the case.

SO ORDERED.

/s/ Joe Laplante
Joseph N. Laplante
United States District Judge

Dated: August 25, 2025

cc:   Marc Balestrieri, in default proceeding pro se.
      Counsel of record.

---

[26] New Hampshire's apportionment statute, RSA 507:7-e, may have been implicated here had the matter gone to trial. Because the case is resolved based on settlements and default, there is no damages verdict, and no party moved for, requested, or briefed apportionment of damages among the defendants. The court will not undertake an apportionment analysis sua sponte in these circumstances.